TAPPAN'S APPEAL.                                $\left\{ \begin{array}{c} \text{MARCH 11,} \\ \text{1875.} \end{array} \right.$

A testator disposed of his property by will as follows: "I give and devise to my executors hereinafter named,—my brother W. T., and my son J. W. T.,—in trust, my present dwelling-house, situate * * for the sole use, improvement, and benefit of my son J. W. T. and his heirs, subject to the particular interest of a part of the same before given to my wife, S. T."

S. T. having died, J. W. T. took possession of the premises, and after many years died, having devised the same to his wife, H. E. T.   *Held*—the devise to W. T. and J. W. T., though without words of inheritance, passed a fee in the estate, which upon the death of the original testator vested immediately in J. W. T. by force of the statute of uses, said fee being qualified and incumbered, during the lifetime of S. T., by her "particular interest" therein; and on the death of J. W. T. his wife took, by devise from him, an absolute legal estate in fee-simple.

The testator also bequeathed as follows: "I give to the said W. T. and J. W. T., in trust, the sum of ten thousand dollars, to be made permanent and secure by mortgages on real estate, or otherwise, as said trustees may consider most advisable; the interest of said sum to be disposed of by my said trustees in manner following, to wit,—two hundred dollars to be paid annually to my wife, S. T., so long as she shall remain my widow, and no longer; the proceeds of the remainder of the interest of said sum to be paid to my son J. W. T. or his heirs, annually, or oftener should it be considered advisable and necessary, during the natural life of my son J. W. T.; and at his decease it is my will and intention to give the said sum of ten thousand dollars, in trust, to my grandchildren, in equal proportions," &c.   *Held*—on the death of the original testator this fund vested in his grandchildren, subject only to the trust in favor of S. T. and J. W. T.; and on the death of S. T. and J. W. T. the fund did not revert to the estate of the original testator, but the said grandchildren took an absolute title in the fund, discharged of all trusts.

The words "in trust," as used in the last line of the testator's bequest above recited, were construed as words of designation and description merely.

*Burke*, for the appellant.

*Snow*, for William Clark, executor of Harriet E. Tappan, deceased.

The facts of this case sufficiently appear in the opinion of FOSTER, C. J.

*FOSTER, C. J., C. C. The questions presented by this case are those arising upon the issues tendered by the reasons assigned by the appellant for his appeal from the decree of the probate court in November, 1872, revoking the previous appointment of an administrator *de bonis non* of the estate of John Tappan. The preliminary proceedings and decrees in the probate court, and the questions raised and somewhat discussed by counsel here concerning them, are immaterial, and may be disregarded.

The will of John Tappan contains the following clauses: "Item. I give and devise to my executors hereinafter named, my brother Weare Tappan, and my son John W. Tappan, in trust, my present dwelling-house, situate in Claremont aforesaid, also the house lot and all the buildings thereon standing, for the sole use, improvement, and benefit of my son John W. Tappan and his heirs, subject to the particular interest of a part of the same before given to my wife, Sabrina Tappan. I also give to the said Weare Tappan and John W. Tappan, in trust, the sum of ten thousand dollars, to be made permanent and secure by mortgages on real estate, or otherwise, as said trustees may consider most advisable; the interest of said sum to be disposed of by said trustees in manner following, to wit,—two hundred dollars to be paid annually to my wife, Sabrina Tappan, so long as she shall remain my widow, and no longer; the proceeds of the remainder of the interest of said sum of ten thousand dollars to be paid to my son John W. Tappan or his heirs, annually, or oftener should it be considered advisable and necessary, during the natural life of my son John W. Tappan; and at his decease it is my will and intention to give the said sum of ten thousand dollars, in trust, to my grandchildren, in equal proportions. It is my will and intent that the provisions herein made for my wife, Sabrina Tappan, shall be instead of her dower at law in my estate. Item. All the rest, residue, and remainder of my estate, whether real or personal or mixed, in Claremont aforesaid, wheresoever being after payment of my just debts, I give, bequeath, and devise to my son John W. Tappan."

John Tappan died October 1, 1837; Sabrina Tappan died December 1, 1839; Weare Tappan died April 6, 1868; John W. Tappan died December 29, 1869. John C. Tappan and Ralph M. Tappan were the only sons of John W. Tappan, who was the only son of John Tappan. John C. Tappan and Ralph M. Tappan are named in the will of John Tappan as his grandchildren. John C. Tappan died November 1, 1866, as ascertained since his mother's death, leaving no issue. Ralph M. Tappan died February 18, 1870, leaving no issue. Harriet E. Tappan, the widow of John W. Tappan, was appointed executrix of his will January 1, 1870, said will having been duly proved and allowed. Said Harriet E. Tappan died in 1873, and William Clark was duly appointed executor of her last will and testament, said will having been duly proved and allowed. John C. Tappan left no issue.

---

*CUSHING, C. J., did not sit.

There is no evidence that he was ever married or ever had any issue. Harriet E. Tappan was the mother of John C. Tappan and Ralph M. Tappan. John W. Tappan in 1855 became sole executor and trustee ·under John Tappan's will. All the legacies under John Tappan's will have been paid, and all his debts. The appellant is a son of Nathaniel Tappan, one of the brothers named in the will of John Tappan.

The appellant contends that assets of the estate of John Tappan remain unadministered; that, with regard to the fund of ten thousand dollars, the trust became exhausted upon the death of John W. Tappan without issue, and the fund reverts to the estate of John Tappan, to be disposed of by distribution among his collateral heirs; and that the same result follows with regard to the real estate which, he contends, remained legally in the hands of the trustees until the death of John W. Tappan, instead of having vested in him immediately upon the death of the testator by operation of the statute of uses. Hence the necessity for the appointment of an administrator *de bonis non*.

On the contrary, the position of the executor of Harriet E. Tappan is, that there is no estate of John Tappan remaining to be administered upon, and that his collateral heirs have no rights or interests therein.

The first clause in John Tappan's will relates to the disposition of his homestead estate, which is devised to Weare Tappan and John W. Tappan, " in trust, * * for the sole use, improvement, and benefit of my son John W. Tappan and his heirs, subject to the particular interest of a part of the same before given to my wife, Sabrina Tappan."

After the lapse of little more than two years, the interest of Sabrina Tappan, whatever it was, was discharged by her death.

Thereupon the entire beneficial interest of John W. Tappan and his heirs was released from every incumbrance : and having taken possession and improved the estate, and for more than thirty years enjoyed the " sole use, improvement, and benefit " of it, John W. Tappan died in 1869, having devised the property to his surviving wife, Harriet E. Tappan.

The devise to Weare Tappan and John W. Tappan, though without words of inheritance, passed a fee simple estate, under the provisions of the statute of July 2, 1822, which has been substantially reënacted in later statutes. Gen. Stats., ch. 174, sec. 4; *Lummus* v. *Mitchell*, 34 N. H. 39.

It is therefore wholly immaterial whether the legal estate remained in the persons named as trustees, and their heirs, or vested at once in John W. Tappan by operation of the statute of uses, since in neither event was any reversion or remainder left for the heirs of John Tappan. But without any doubt, as it seems to me, the legal estate in fee simple vested in John W. Tappan immediately upon the death of his father, and being the absolute owner thereof at the time of his death, his wife takes the same unqualified and unincumbered estate by force of his will.

The statute of 27 Henry VIII, ch. 10, commonly called the statute of uses, is recognized and adopted in this as in most of the states of

the Union. Perry on Trusts, sec. 299, and note 6 ; *Exeter* v. *Odiorne*, 1 N. H. 237 ; *French* v. *French*, 3 N. H. 234 ; *Upham* v. *Varney*, 15 N. H. 462 ; *Hutchins* v. *Heywood*, 50 N. H. 491.

The elementary writers call our attention to the requirement of three things for the effectual operation of this statute, namely, a *person seized* to the use of another, a *cestui que use in esse*, and a use *in esse;* and when these three things concur, the use is said to be executed,— that is, the possession and legal estate of the lands out of which the use was created are immediately taken from the feoffee to uses and transferred *by mere force of the statute* to the *cestui que use*, who thereby takes, not a seizin and possession in law only, but an actual seizin and possession in fact.

A trust, technically speaking, ordinarily exists only where the use is incapable of being executed, and so the legal estate is necessarily left as at common law.

If the beneficial interest which one person has in land which in the eye of the common law belongs to another is a *permanent* enjoyment of the benefits or profits of the land, it is a *use;* if the interest is for a temporary purpose, it is a *trust*. *Hutchins* v. *Heywood*, 50 N. H. 491 ; 1 Cruise Dig. 349 ; 2 Washb. R. P. *113, *119 ; Co. Litt. 266, *b;* Adams on Ejectment 82.

Here the devise, in the terms of the will, is " in trust, for the sole use, improvement, and benefit of John W. Tappan and his heirs."

But technical words will not create a trust. It is a fixed rule of construction that " there is no magic in particular words." Hill on Trustees *65. The test, which determines whether the devise or conveyance is governed by the statute of uses, whereby the legal title is transferred, or whether a trust is created whereby the legal title is reserved in the trustee, is very plain and simple. If the party who takes the beneficial interest has the full and uncontrolled use of the property, he takes the legal as well as the equitable title. If anything remains for the trustees to do concerning the property, such as may require them to retain the control of it to any extent or for any purpose, in such a case they retain the legal estate, and the *cestui que trust* has only an equitable interest in it.

To adopt the language of our late very learned Chief Justice PERLEY (who after his retirement from the bench expressed his views of this case in an opinion furnished at the request of the counsel for the executor of Mrs. Tappan's will), the use of the word *trust*, as employed by the testator, " did not create a trust in law and prevent the vesting of the legal estate in John W. Tappan and his heirs, if he and his heirs had the use of the property within the meaning of the statute. *Exeter* v. *Odiorne*, 1 N. H. 236 ; *Upham* v. *Varney*, 15 N. H. 462 ; *Broughton* v. *Langley*, 2 Ld. Raymond 873 ; *Right* v. *Smith*, 12 East 455 ; 1 Cruise Dig. 423, sec. 48 ; 2 Jarman on Wills 198. John W. Tappan and his heirs have the 'sole use, improvement, and benefit' of the property. The persons named as trustees and grantees can have no use, improvement, or benefit of the premises as trustees or grantees. This gives the

use of the property, in terms at least, as strong as if it had been given simply for the use of John W. Tappan and his heirs; and in this last case, the mere use of the land would carry the legal estate and the complete title in fee simple to him who had the use. The test is, did the will charge the persons named as trustees with the performance of any duty which required them, to retain the possession and control of the land? If it did, the legal estate and the possession and control of the land would remain in them, to enable them to discharge their trust. If it did not, the legal estate passed at once to the party who had the use. For instance: If the devise were to the trustees to collect the rents and pay them over to a third person, the legal estate would vest and remain in the trustees, because they could not discharge the trust of collecting and paying over the rents without it. But if the devise were in trust *to permit a third person* to receive the rents, the estate would immediately vest in that third person, and the person named as trustee would have nothing in the land. *Broughton* v. *Langley*, 2 Ld. Raymond 873; *Barnett's Appeal*, 46 Pa. St. 392; *Ware* v. *Richardson*, 3 Md. 505; *Upham* v. *Varney*, 15 N. H. 462." These views have been fully sustained by the late supreme court in *Hutchins* v. *Heywood* before cited;—and see Perry on Trusts, sec. 298. Judge PERLEY remarks, upon "a peculiarity of this devise, that one of the parties named as trustee takes also the use and beneficial interest in the premises. The devise is to Weare Tappan and John W. Tappan, in trust, 'for the sole use, improvement, and benefit of John W. Tappan and his heirs.'" But he takes it to be "well established, that whoever may be named as trustees or grantees, the party that has the use takes the legal estate by operation of the statute. Thus, if a conveyance or devise is made in trust for the same person that has the use—if in this case the devise had been to John W. Tappan, in trust, for the use of John W. Tappan and his heirs—John W. Tappan would have taken the fee simple, not by operation of the statute, but directly. 1 Cruise Dig. 419, sec. 31; Bacon's Reading 63. And if a person enfeoffs J. S. to the use of J. S. and a stranger, they shall both be in by the statute. 1 Cruise Dig. 423, sec. 38; Bacon's Reading 64."

And his conclusion is, that "under this devise, as John W. Tappan and his heirs had 'the sole use, improvement, and benefit' of the property devised, John W. Tappan, on the death of John Tappan, took an unqualified fee simple; that in legal effect the devise is precisely the same as if the devise had been to John W. Tappan and his heirs directly, without naming any other person as trustee, and that under the will of John W. Tappan his wife took an absolute legal estate in fee simple. Even if the legal estate on the death of John Tappan could be supposed to vest and remain in the persons named as trustees, the whole use and beneficial interest would be in John W. Tappan and his heirs; the trustees would have a naked trust, without any right to the use and enjoyment of the land. In no case could Weare Tappan or his heirs have any equitable interest in the land. The whole legal estate in fee simple would on such a supposition vest

in the trustees and their heirs, to the use of John W. Tappan and his heirs."

The auditor appointed in this case has found and reported that in 1855 John W. Tappan became sole executor and trustee under his father's will, and therefore it follows that the legal and the equitable estates, if they could be considered as distinct and separate before, were then united in the same person.

The appellant contends that the statute of uses did not operate upon this estate, but the legal estate remains in the trustees, because of a temporary and long since extinguished life interest of Sabrina Tappan in the estate.

Now, although the effect of the statute of uses may be to vest the legal estate *immediately* in the *cestui que use*, I fail to see how or why it should be held to be wholly inoperative because that effect and final result may be temporarily delayed. When the purposes of a trust are all fulfilled, when the trust is fully executed, when the persons named as trustees have nothing more to do, and the beneficial use of the property by the *cestui que trust* is relieved of every condition and incumbrance, why should not the statute *then* take effect, and transfer and confirm the legal estate in the beneficiary? Until such incumbrance was removed, the estate in the beneficiary was an estate analogous to a qualified or base fee; but when the qualification annexed to it was removed, it became an estate in fee simple.

But even supposing John W. Tappan never had anything more than an equitable estate, it was an estate capable of being conveyed or devised; and his grantee or devisee would take by deed or will the same equitable estate which he had. This equitable estate, if we must call it by that name, was the "sole use, improvement, and benefit" of the property; and if the legal heirs of Weare Tappan, one of the original trustees, still hold the legal estate, they hold it in trust for the "sole use, improvement, and benefit" of the devisee of John W. Tappan.

An equitable interest in land is devisable at common law. Williams on Real Prop. \*138, \*139; Perry on Trusts, sec. 227; 1 Redf. on Wills 390; 6 Cruise Dig., Tit. XXXVIII, ch. 3, sec. 7; *Jones* v. *Roe*, 3 D. & E. 95. And by statute, in this state, every person may dispose of any right or interest he may have in any property, by his last will in writing. Gen. Stats., ch. 174, sec. 1.

With regard to the bequest of ten thousand dollars, this is given in trust, and, being personal estate, it is not within the statute of uses. It is contended by the appellant that the trust was exhausted upon the death of the children and heirs of John W. Tappan, and the trust fund thereupon reverted to the estate of John Tappan, and has thus become assets remaining for distribution.

On the other hand, the executor claims that the trust terminated on the death of John W. Tappan, and that the fund vested in the grandchildren on the death of the testator, subject only to the trust during the lifetime of their father, John W. Tappan. The words "in trust,"

in the last clause of this provision, it is said, are mere words of description of the trust fund previously mentioned, and mean precisely the same as the words " bequeathed in trust as aforesaid "—the whole clause meaning, " and at his death it is my will and intention to give the said sum of ten thousand dollars, bequeathed in trust as aforesaid, to my grandchildren, in equal proportions ; " and it seems to me that such is the fair construction to be given to the will.

We must endeavor to interpret it according to the testator's probable intention ; and I look in vain for any symptom of a design on the part of John Tappan to reserve this fund for his remote collateral heirs. By the terms of the bequest he provides for the support of his widow out of this fund, then for his only son, and then he gives the said sum of ten thousand dollars, in trust, to his grandchildren, in equal proportions.

Who ever heard of the creation of an absolute trust—a pure, technical trust, as this is claimed to be—in which several trustees of a specific fund, which is not required to be invested in any special manner requiring a division of it, nor required to be appropriated to any specified uses or purposes, was, nevertheless, to be held by the trustees in equal proportions ?

Again : the testator seems to have had clear enough views as to the nature of a trust, in that ordinarily a trust would have reference to a beneficiary, for in the other clause of the same item in his will he distinctly devises his real estate, in trust, for the use of his son John W. So, also, in this clause he places the income of this fund, in trust, for the benefit first of his wife, and then of his son and heirs during the lifetime of his son ; and then he gives, not the income, but the principal fund, to his grandchildren, in equal proportions, " in trust"—for whom ?

I can form no other idea concerning the meaning of the testator than that which the counsel for the executor suggests, that the words *in trust* were used only by way of designation of the fund, and were not intended to limit or qualify the bequest to the grandchildren, after the purposes of a preëxisting trust had been fulfilled.

Upon this point, also, I am constrained to adopt the views expressed by Judge PERLEY :

"The trust in Weare Tappan and John W. Tappan in the $10,000 fund could not last longer than the life of John W. If Weare Tappan survived John W., the fund would not remain in Weare Tappan's hands, because on the death of John W. the fund was to be transferred in trust to the grandchildren of the testator. The trust in Weare and John W. Tappan could not, therefore, be to pay the proceeds of the fund to the heirs of John W. Tappan after his death ; and by the heirs of John W. Tappan the testator meant the children of John W. Tappan, who would be his heirs in a popular sense, and could not mean his heirs in the legal sense of the term. If on the death of John W. Tappan the fund is given to the grandchildren of the testator *in trust,* there is no limitation or qualification of this bequest to the grandchildren, and of course the gift carried the whole property in this

personal estate to the grandchildren, whether the gift was absolute, or intended to be charged with some trust. The gift was to the grandchildren of the testator, not naming any individuals. When John W. Tappan died, he left one son, Ralph M. Tappan, who was then the only grandchild of the testator, and this fund then vested in this grandchild. This grandson was also the sole heir general of the testator, as John W. was his only child, and the surviving grandchild was the only lineal descendant of the testator. If here was a trust for the heirs general of the testator, the grandchild would hold the legal interest in trust for his own benefit. He would have the control of the fund as trustee, and the whole use of it as the beneficiary under the trust. The law does not allow any such union of the legal and beneficial interest. Where the party who has the whole use of the fund has also the entire management and control of it, the legal interest vests in him who has the use. For this reason, as the gift is without limitation or qualification to the grandchildren, and under this gift the whole absolute title in the fund goes to them, they have the legal as well as the equitable interest discharged of any trust, even if the intention was to create a trust. For another reason the grandchildren would take an absolute estate in the fund. If the intention of the testator was that the trust should be maintained longer than the lives of the grandchildren, so that the whole title should not vest in them, his intention was, of course, that they should not have the power to dispose of the fund; and as there is no limitation of the legal estate to the life or lives of the grandchildren, in terms, his intention must have been that their heirs and next of kin should take the fund charged with the same trust, so as to put it beyond the power of the children and heirs of the grandchildren to dispose of the fund. If the fund is to be held in trust, there is no limitation of the trust; and if the trust could be upheld according to such intention of the testator, it would lead to a perpetuity."

I find nothing remaining of the estate of John Tappan,—if the foregoing views are correct,—for the residuary clause to operate upon.

If in any view of the matter anything was left, it passed to John W. Tappan by force of this clause, and so by his will descended to his widow.

I am therefore of the opinion that there are no assets belonging to the estate of John Tappan remaining to be distributed; and consequently this appeal should be dismissed, and the decree of the probate court revoking the appointment of an administrator *de bonis non*

*Should be affirmed.*

LADD and SMITH, JJ., concurred.