Aug. 10, 1876.                    PINKHAM *v.* BLAIR.

*Executory devise—Next of kin—Indefinite failure of issue.*

P. devised to his two daughters, Mary and Lucy, his estate, with the proviso that if either should die without issue, the survivor should take the share of the deceased sister; and if both should die without issue, his son should take the estate for life, remainder to heirs of his body and their heirs forever; but if the son should die without heirs of his body, the estate should go to the next of kin of the testator and their heirs. Lucy died in 1860, the son in 1861, and Mary in 1873, all without ever having had issue, and all intestate. *Held*, that the limitation over to his next of kin was valid by way of executory devise, being to take effect upon a definite failure of issue, it appearing from the whole will that the testator intended to confine the failure of issue to a dying

without issue living at the death of the surviving daughter. *Hall* v. *Chaffee*, 14 N. H. 215, affirmed.

*Semble*, that a limitation over, to take effect upon an indefinite failure of issue, is void for remoteness.

*Held*, further, that by *next of kin* the testator intended those who were such at the death of the surviving daughter, and not those who were such at his own death.

Where the words *next of kin* are used *simpliciter* in a gift over, and without any explanatory context showing a different intention on the part of the testator, they must be taken to mean next of kin according to the statute of distributions.

FROM MERRIMACK PROBATE COURT.

APPEAL from the decree of the probate court for this county, made September 14, 1875. The case was submitted upon the following statement of facts:

Richard Pinkham, of Concord, made his will August 18, 1851, died December 18, 1853, and his will was duly proved February 28, 1854. In 1857 Sylvester Dana was appointed administrator with the will annexed, in place of the former administrator, who had resigned.

In his will, Pinkham disposed of his property in the following terms:

" First. I give, bequeath, and devise to Sarah C. Pinkham, my wife, the one third part of all my real estate, wherever the same may be situate, to have and to hold the same to her and her assigns during the term of her natural life ; and I also give and bequeath unto my said wife one fourth part of all my personal estate, after the payment of my debts and charges of administration.

" Secondly. I give, bequeath, and devise to my two daughters, Mary Ann Pinkham and Lucy Ellen Pinkham, share and share alike, two third parts of all my real estate, and three fourths of all my personal estate, wherever the same may be situate, together with the remainder in the remaining third part of my real estate from and after my wife's decease—to have and to hold the same to them, the said Mary Ann and Lucy Ellen Pinkham, free from the control and intervention of any husband that either of them may have, and to their respective heirs and assigns forever, they conforming to and discharging the provisions of this will.

"And my will further is, that if either of my said daughters shall die without issue, that the survivor of them and her heirs and assigns shall have the share of her deceased sister; and if both of my said daughters die without issue, that my son, Charles E. Pinkham, shall have the use and income of all my said estate during his natural life, and after his death the same to descend to the heirs of his body, and their heirs and assigns forever ; but if the said Charles E. Pinkham shall die without any heirs of his body, then my will is that said estate shall go to my next of kin, and their heirs and assigns forever."

o

The will contained a provision that the daughters should pay certain annuities to the testator's son, mother, and sister, during their lives; and if the daughters died without issue and the estate should come to his son and the heirs of his body, he and they should continue the same annuities to his mother and sister during their lives—all which annuities were paid. To these and any other provisions of said will, and to any papers on file in the probate office, either party may refer in argument.

Lucy, one of the daughters named in the will, died March 27, 1860; Charles, the son, died December 9, 1861; Sarah C. Pinkham, the widow, died July 22, 1866; and Mary, the other daughter, died October 14, 1873. The son and both the daughters died without ever having had issue, and all intestate.

At the time of the death of Mary there were living, of Richard Pinkham's brothers and sisters (his father and mother being dead), Enoch Pinkham, of Dover, N. H., since deceased, leaving five children and a widow, who is executrix of his will and one of the appellants; George W. Pinkham, of Port Huron, Michigan, and Mary Chapman, of Providence, R. I., the other appellants. Four brothers of said Richard Pinkham had previously deceased, all leaving children, who were then living. There were also living at the decease of said Mary Ann Pinkham, of her mother's brothers and sisters (her mother's father and mother being both dead), Samuel Blair, of Lynn, Mass., and Lucy Ann Patten, of said Lynn, the appellees. One maternal uncle had deceased prior to said Mary Ann's death, leaving two children then surviving.

During the lifetime of the said daughters of Richard Pinkham, the administration of his estate was kept open, in consequence of the inability of themselves and other members of the family to manage their affairs, and at their request.

After the decease of said Mary Ann, said Dana was appointed administrator of her estate, which consisted wholly of funds then in the hands of said administrator under her father's will.

In accordance with notice given, both estates were settled in said probate court Aug. 24, 1875, when an unexpended balance of $1,623.13 was found remaining in the administrator's hands, in addition to thirty dollars previously advanced to Mrs. Chapman, one of the appellants, and credited in his account.

The administrator filed with the judge of probate a petition, setting forth the facts in the case as he understood them, and asking him to decree to whom he should pay said balance; and the judge thereafter decreed that he should pay the same equally to said appellants (less said $30 to Mrs. Chapman), and to said Samuel Blair and Lucy Ann Patten, as the next of kin of said Mary Ann at the time of her decease, they being then her surviving paternal and maternal uncles and aunts.

From this decree the appellants claimed an appeal, on the ground that both the daughters and the son of Richard Pinkham having

died without issue, his estate remaining in the hands of his administrator, should go to his next of kin surviving at the death of said Mary Ann Pinkham, the last survivor of his children, according, as they say, to the terms and true intent and meaning of his said will.

*Asa Fowler,* for the surviving brothers and sister of the testator.

The questions to be determined in this case arise upon the construction of the second clause of the will of Richard Pinkham. "The pole star to guide the court" in the interpretation of that will is the intention of the testator therein expressed ; and the will is to be so construed as to carry into effect that intention, so far as it can be gathered from the language in which it is expressed, if it can be done without contravening some positive and settled rule of law. *Malcolm* v. *Malcolm,* 3 Cush. 477 ; *Hall* v. *Chaffee,* 14 N. H. 215 ; *Bell* v. *Scammon,* 15 N. H. 381 ; *Eaton* v. *Straw,* 18 N. H. 320 ; *Downing* v. *Wherrin,* 19 N. H. 9, and authorities cited *passim; Crosby* v. *Wendall,* 6 Paige 548 ; *Parks* v. *Parks,* 9 Paige 117 ; *Pond* v. *Pond,* 10 Paige 152 ; *Pease* v. *Snaplin,* 1 Atkyns 416 ; *Marshall* v. *Marshall,* 1 Atkyns 412.

What, then, was the intention of the testator as to the property disposed of by the second clause of his will ?  Most clearly and unequivocally, to give one half thereof in fee to his two daughters, conditional upon their dying leaving living issue ; to the survivor of them the share of the deceased sister in fee upon the same condition, in case the deceased sister should die without leaving issue living ; and if both daughters should die without leaving living issue in the lifetime of the son, then to the son for life, and in fee to his issue ; but if he should die without leaving issue surviving him to inherit the property, then over to the next of kin of the testator, then living, in fee simple absolute.  It does not seem to us to admit of a doubt that such was the true and actual intent of the testator in making the devise and bequest in the second clause of his will, and it would be difficult to find language in which that intention could be more clearly and definitely expressed by a man not versed in legal technicalities.

Is the devise over to the next of kin of Richard Pinkham, living at the death of the last survivor of his children dying without leaving living issue, void as too remote, or is it valid as an executory devise ?  We say, without the slightest hesitation, upon a careful examination of all the authorities, that in our judgment it is valid and good beyond all question.

It is entirely clear, upon principle as well as authority, that the son, Charles E. Pinkham, having deceased in the lifetime of the daughter, Mary Ann, without leaving any living issue or heirs of his body to inherit the property devised and bequeathed over to him for life and to his issue in fee if he should die leaving such issue living, it is as if no such devise and bequest had ever been made, and the next of kin of Richard Pinkham take by original devise, on the death of Mary Ann without leaving issue living, precisely as if no devise or bequest had

been made to Charles E. Pinkham. The only effect of the devise to Charles E. and the heirs of his body is, to show more clearly the intention of the testator to limit the estates of the first takers to their death without leaving issue living at the time thereof. *Eaton* v. *Straw*, 18 N. H. 320, and authorities cited by S. D. Bell in argument on p. 324 ;—see, also, *Den* v. *Hance*, 6 Halst. 244 ; *Brown* v. *Brown*, 43 N. H. 17 ; *Yeaton* v. *Roberts*, 28 N. H. 459 ; *Prescott* v. *Prescott*, 7 Met. 141 ; 6 Cruise's Digest, c. 8, ss. 25, 26 ; 1 Jarman on Wills 730.

I. Conceding, then, for the purposes of this case, the correctness of the old English rule in relation to estates of inheritance, that the words " dying without issue," without more, are held to mean an indefinite failure of issue, which the late Chief-Justice PARKER, in *Hall* v. *Chaffee*, 14 N. H. 239, says was so repugnant to the sound sense of the British nation that it has been altered by act of parliament (1 Vic. c. 26, s. 29), and that it would be applicable to the personal estate remaining in the hands of Mr. Dana at the settlement of his account as administrator of Richard Pinkham on August 24, 1875,—as upon the authorities we say it manifestly would not be applicable,—still, we say, the words of the will clearly indicate an intention of the testator to confine the failure of issue to a dying without issue living at the death of the first takers, and are abundantly sufficient to rebut the construction of an indefinite failure of issue. After giving his property in equal shares to his daughters, Mary Ann and Lucy Ellen Pinkham, their heirs and assigns forever, " they conforming to and discharging the provisions of this will," these words are, " and my will further is, that if either of my said daughters shall die without issue, that the survivor of them and her heirs and assigns shall have the share of her deceased sister ; and if both of my said daughters shall die without issue, that my son, Charles E. Pinkham, shall have the use and income of all my said estate during his natural life, and after his death, the same to descend to the heirs of his body and their heirs and assigns forever ; but if the said Charles E. Pinkham shall die without any heirs of his body, then my will is, that said estate shall go to my next of kin and their heirs and assigns forever." Here are four distinct and independent phrases, each of which certainly indicates the intention of the testator to confine the failure of issue on which the estate was given over to a dying without issue living at the death of the first takers : (1) If one of the daughters shall die without issue in the lifetime of the other, the survivor is to take the estate of the deceased sister in fee ; (2) if both the daughters die without issue, in the lifetime of Charles E., then Charles E. is to take for life ; (3) if Charles E. shall die having issue or heirs of his body, upon his death that issue or those heirs of his body are to inherit or " heir " the estate ; (4) if Charles E. die without issue or heirs of his body, the next of kin of the testator are immediately to take in fee simple absolute. This phraseology, taken together, must satisfy the most devoted advocate for adherence to technical rules and technical meanings not only that the testator intended a failure of issue at the time of the deaths of the daughters respectively,

and of the son, but that the terms of the will do not reasonably admit of any other construction. It brings this case clearly within the principle of *Pells* v. *Brown*, Cro. Jac. 590, which Lord KENYON, in *Porter* v. *Bradley*, 3 D. & E. 146, characterized as the *magna charta* of this branch of law, where the devise was to the testator's son, Thomas, and his heirs forever; but if Thomas die without issue, living William his brother, then over to William and his heirs forever—which was held a good devise over, and within the principle and letter of hundreds of other cases since decided in England and in this country. See *Hall* v. *Chaffee*, 14 N. H. 215; *Bell* v. *Scammon*, 15 N. H. 381; *Eaton* v. *Straw*, 18 N. H. 320; *Downing* v. *Wherrin*, 19 N. H. 9; and the numerous cases cited by the court and by the counsel in argument in each of those cases, very many of which cannot be distinguished from the case at bar.

An executory devise over, after a devise or devises in fee, is good, if depending on contingencies which must happen within the compass of a life or lives in being, and twenty-one years and ten months after. *Hawley* v. *Northampton*, 5 Mass. 3, and authorities. In this case all the contingencies on which the devise over to the appellants depended must, by the terms of the will, rightly construed, happen upon the deaths of the three children of the testator living at the time of the execution of his will. The number of contingencies is not material, if they are to happen within the limits allowed by law. *Miller* v. *Chittenden*, 4 Iowa 252.

Then, too, the provision imposing the burden of the annuity to the testator's mother and sister upon the successive takers of the property, as those preceding them should die without issue, shows most conclusively that the testator must have intended a definite failure of issue at the death of the successive takers.

A devise over, after express devises in fee, on the first devisee's dying without issue, to one *in esse* for life, or where the testator shows an intent to provide for the devisees over in case the first devisee leaves no issue at his death, is a good executory devise. *Ide* v. *Ide*, 5 Mass. 500, 502; *Richardson* v. *Noyes*, 2 Mass. 56; *Barinz* v. *Carey*, 7 Cranch. 450; *Jackson* v. *Christman*, 4 Wend. 277; *Morgan* v. *Morgan*, 5 Day 517; *Wilson* v. *Wilson*, 32 Barb. (N. Y.) 328.

A limitation to a survivor indicates an intention to limit on a definite failure of issue. *Mayer* v. *Wiltberger*, Geo. Dec., part II, 20; *Rogers* v. *Randall*, 2 Speers 38; *Cutter* v. *Doughty*, 23 Wend. 515; *Moore* v. *Howe*, 4 Mon. 199; *Pendleton* v. *Pendleton*, 2 Murph. 82; *Coates* v. *Street*, 2 Ash. 12; *Southerland* v. *Cox*, 3 Dev. 394; *Johnson* v. *Currier*, 10 Barr. 498; *Haines* v. *Smith*, 16 Geo. 545; *Bramlet* v. *Bates*, 1 Sneed (Tenn.) 554; *Bedford's Appeal*, 40 Pa. St. 18; *Fosdick* v. *Cornell*, 1 Johns. 439; *Jackson* v. *Blanshan*, 3 Johns. 292; *Moffat* v. *Strong*, 10 Johns. 12; *Jackson* v. *Staats*, 11 Johns. 337; *Anderson* v. *Jackson*, 16 Johns. 382.

The clear intention of the testator controls the legal operation of words however technical. *Lasher* v. *Lasher*, 13 Barb. 106; *Niles* v. *Gray*, 12 Ohio (N. S.) 320.

Almost any number of decisions might be cited in support of the views we have taken, that under the clear intention of the testator as shown by the language of his will, the devise over to the next of kin of the testator, at the death of the first takers without issue, is good and valid, even if the will was to operate on real estate. But the question has been so fully discussed and clearly settled in the reported decisions in this state, to which we have referred, in the fourteenth, fifteenth, eighteenth, and nineteenth volumes of our reports, that we do not feel at liberty to occupy longer the time of the court in referring to authorities, especially as the will in this case only operates on personal estate. To our mind it seems entirely clear that the executory devise or bequest over is valid, being to take effect on the definite failure of issue of the first takers,—that is, upon their dying without leaving issue living at their deaths.

II. But it may be said that if we are correct in the construction of the will, and the bequest over is good, the estate over vested in the next of kin of Richard Pinkham, who were such at the time of his death. We admit that where a testator gives real or personal estate to a stranger for life, or for any other limited interest, and then over to his next of kin, those who stand in that relation at the death of the testator will be entitled, whether living or not at the period when the devise over takes effect. 2 Jarman on Wills 52, and authorities.

If, however, there be a gift for life, or, as in this case in fee, to persons who are themselves the sole next of kin of the testator at the time of his decease, the gift over must be considered as intended to refer to the persons answering the description of next of kin at the death of the first taker. 2 Jarman on Wills 54, 55.

Thus in the case of *Jones* v. *Colbeck*, 8 Ves. 38, where a testator devised the residue of his property to the children of his daughter, and until she should have children, or if she should survive them, to the use of his daughter for life, and on the death of his daughter and her children under twenty-one years of age, over to his relations, which was held to mean next of kin, the daughter being the only next of kin of the testator at the time of his death, Sir WILLIAM GRANT held that it was clear the testator intended to speak of his relations, not at the time of his death, but at that of his daughter or her children under age, deeming it impossible that the testator could mean that his daughter, whom he evidently thought would survive him, should take under the devise over.

So in *Briden* v. *Hewlett*, 2 Mylne & Keen 90, where the testator gave his personal estate to trustees in trust for his mother for life, and after her death to such persons as she should by will appoint, and if she should fail to make a will, then to such person or persons as would be entitled under the statute of distributions. The mother was the sole next of kin of the testator at his death, and Sir JOHN LEACH held that she was not entitled absolutely to the property in this character, but that the property devolved to the testator's next of kin at the decease of his mother. " It is impossible," said the Master of the Rolls, " to

contend that this testator meant to give the property in question absolutely and entirely to his mother, because he gives it to her for life, with a power of appointment." See, also, to the same effect, *Bird* v. *Wood*, 2 Simons & Stuart 400, *Miller* v. *Eaton*, Cooper 272, *Butler* v. *Bushnell*, 3 Mylne & Keen 232, and others.

Now in the case at bar, the property was given by the testator to his two daughters and the survivor of them, and upon their death without issue in the lifetime of his son, to the son for life, and then to his son's issue in fee; and the son and two daughters, children of the testator, were his only next of kin at his decease. It would be, it seems to us, extremely absurd to suppose the testator could possibly have intended to give the property over, after the death of his children without issue, to those very children to whom he had previously given it in fee. In the language of the cases we have cited, such an idea is impossible to be entertained, and the testator must have intended to give it to those who should be his next of kin at the decease of the last survivor of his children, they all having died without leaving living issue— that is, as the case finds, to the appellants, his then surviving brothers and sisters. Such a devise over to those to whom the property had already been given in fee would be repugnant to the preceding provisions of the will, because both could not be carried into effect, and therefore void. *Sweet* v. *Chase*, 2 Comstock 73, and authorities.

III. But it may be objected that if the will gives a valid estate in fee in the residue of the property in the hands of the testator's administrator, on the decease of the last surviving child of the testator without issue, to the testator's next of kin, the appellants are not exclusively entitled to the property, but the same should go in equal shares to them and to the representatives of such of the testator's brothers and sisters as had previously died leaving children.

Fortunately the precise question suggested by this objection, after some considerable conflict of authority, may be considered to have been finally and conclusively settled in the case of *Elmesly* v. *Young*, 2 Myl. & K. 780, by Lords Commissioners SHADWELL and BOSANQUET, on appeal from the decision of the Master of the Rolls, Sir JOHN LEACH. To the powerful, lucid, and exhaustive opinions of each of the lords commissioners in that case, showing as we think most clearly, that, both on principle and on the weight of such authority as Lord THURLOW, Lord ELDON, Sir WILLIAM GRANT, and Sir THOMAS PLUMMER, as well as upon the language of the statute of distributions itself, a devise or bequest, as in this case, to the next of kin of the testator, without more, gives the property so devised or bequeathed to those persons only who are next in blood relationship to the testator at the time the gift takes effect, to the exclusion of the representatives of deceased brothers and sisters, we refer the court, and beg that they will read them, as furnishing a far more interesting, satisfactory, and conclusive argument than anything we could offer. 2 Jarman on Wills 38. By that decision the appellants, as the only surviving brothers and sisters of the testator at the decease of

his last surviving child, are clearly entitled to the whole fund remaining in the hands of his administrator.

1. The term or phrase " next of kin," in its primary, natural, and ordinary sense, means nearest blood relations. What is " next " but nearest? What is " kin," or kindred, but blood relations? Bouv. Law. Dict., Kindred. In the construction to be given to the phrase in the present case, the statute of distributions is to be rejected altogether, and reference must be made to the rules of language and of law prior to and *dehors* that statute. Nearest blood relations being the primary, natural, and ordinary meaning of " next of kin," upon general principles too well settled to need any citation of authority, the testator must be presumed to have used the phrase in that sense unless it can be shown that it had acquired a well settled legal and technical meaning different therefrom. To do otherwise would be to give a meaning to words very foreign to their natural and obvious meaning, without any ground for assuming that the testator used them in that sense. To hold that " next of kin " means heirs not only defeats the manifest intention of the testator, but absolutely nullifies and makes void the language used by him. When he provided that the property, in a certain event, should go to his " next of kin," he could not have meant it should go to his heirs, for if he had so intended he would have so said. It was quite as easy to have said heirs as next of kin; and there is every presumption that the testator, who well understood the difference between heirs and next of kin, used just the language he intended to use. To construe it as meaning something else is to make a new will for the testator, and defeat his purpose in the will he made.

Taking, therefore, the language of the will in its natural and obvious sense, the appellants, the surviving brothers and sister, are clearly entitled to the property as his nearest blood relations, to the exclusion of his nephews and nieces, who are one degree further removed from him.

2. The words " next of kin " have in law precisely their natural and ordinary meaning, that of nearest blood relations. *Cooper* v. *Dennison*, 13 Simons 290, decided in 1843, where Vice-Chancellor SHADWELL decided that the words next of kin and next of blood are synonymous in the language of the law, taking the language of Lord Coke in *Hensloe's Case*, 9 Coke's Rep. 39 *b*, to be the language of the law, as he did. Says Lord TOTTENHAM, in delivering the decision in *Withy* v. *Mangles*, 10 Clark & Finnelly 251, in June, 1843, after declaring the legal meaning of this phrase to be simply nearest blood relations,—"With the exception, therefore, of the opinion of Sir JOHN LEACH, which was overruled in *Elmesly* v. *Young*, there has been a uniform course of decisions and of opinions for upwards of fifty years in opposition to the doctrine of Mr. Justice BULLER in *Phillips* v. *Garth*. But these decisions and opinions are not only decisive as to the weight of authority, but they displace the only ground upon which the contrary doctrine could be supported." Says Lord TOTTENHAM again, in *Withy* v. *Mangles*, p. 252,—" I find no trace of any such construction [next of kin being construed to mean

heirs at law, according to the statute of distributions] having been adopted except by Lord KENYON in *Stamp* v. *Cooke* [1 Cox 236] in 1786, and by Mr. Justice BULLER in *Phillips* v. *Garth* in 1790, which was in the same year repudiated by Lord THURLOW. To give such a construction to the words would be, under the term 'next of kin,' to include persons not of kin at all, as husbands and wives, and under the word 'next,' to include persons comparatively remote with those nearest of kin." The learned lord then proceeds to show that *Phillips* v. *Garth* was based on Mr. Justice BULLER's misconception of a former decision of Lord KING in *Thomas* v. *Hole*, Cases temp., Talbot 251.

In *Halton* v. *Foster*, Law Rep., 3 Ch. Ap. 506, decided in 1868, Lord Justice SIR W. PAGE WOOD, in delivering the opinion of the court on the question, precisely like the present, whether in a devise to next of kin a surviving sister should take the whole estate to the exclusion of nephews and nieces, says,—"The authorities, which up to a certain point are distinctly applicable to this case, have settled that the words 'next of kin,' without more, mean the nearest blood relations of the *propositus*;" and the court held unanimously that the surviving sister took the whole.

On this point we would refer the court to *Marsh* v. *Marsh*, 1 Brown's Ch. 293 ; *Smith* v. *Campbell*, G. Cooper 272—19 Ves. 404 ; *Garrick* v. *Ld. Camden*, 14 Ves. 385 ; *Wimbles* v. *Pitcher*, 12 Ves. 433 ; *Worthington* v. *Stother*, 1 Mad. 36 ; *Brandon* v. *Brandon*, 3 Swanston 319 ; Wm.'s Executors (6th ed.) 1041 ; and particularly to the elaborately discussed and carefully considered leading cases of *Elmesly* v. *Young*, 2 Mylne & Keen 780, decided in 1835 ; *Withy* v. *Mangles*, 10 Clark & Finnelly 265, decided in 1843 ; and *Halton* v. *Foster*, Law Reports, 3 Ch. Ap. 505, decided in 1868. We beg of the court to examine especially the arguments of counsel and the decisions of the judges in these three last named cases, and the authorities to which they refer. To us they seem entirely conclusive, by an overwhelming weight of authority, upon the question involved in them, which is identical with that in the present case. They leave no possible doubt as to the proper legal construction of "next of kin," when used without more—that it means nearest blood relations alone.

3. The construction of "next of kin," as meaning heirs according to the statutes, is not only repugnant to the natural and ordinary meaning of the phrase, and to its legal meaning as settled by a uniform course of decisions in the highest judicial tribunals of England since 1790, but leads to the most flagrant absurdities, as indicated in the extract from Lord TOTTENHAM's opinion in *Withy* v. *Mangles*, last above quoted. As an illustration, suppose property devised to a son in fee conditional, and, upon his death without issue then living, to the next of kin of that son at his death : suppose the son to die without issue, leaving a widow and two sisters : by our statute, ch. 183, sec. 8, the widow, who is not at all of kin to her husband (2 Jarman on Wills 36, n. 1 ; 2 Kent's Com. (11th ed.) 136, 142 ; *Watt* v. *Watt*, 3 Ves. (Sum-

ner's ed.) 244, note (*a*), and cases cited ; *Green* v. *Hudson*, 32 Barb. 55), is entitled to one half her husband's estate if he die intestate without leaving a lineal descendant. If next of kin of a person means those who would take his estate as heirs under our statute if he died intestate, then the widow of this son, although not at all of kin to him, must take half the whole estate to the exclusion of the sisters, thus defeating the palpable and manifest intention of the testator. Other similar illustrations might be adduced,—as the present case, where nephews and nieces would take equally with brothers and sisters as next of kin.

4. There is no difference between the rules of construction of deeds of settlement, and of wills. *Woodcock* v. *Duke of Dorset*, 3 Brown's C. C. 568 ; *Watt* v. *Watt*, 3 Ves. 244 ; *Bailey* v. *Wright*, 18 Ves. 49 ; *Bulmer* v. *Fay*, 4 Simons 48—on appeal, 3 Mylne & Keen 197 ; *Wright* v. *Kemp*, 3 T. R. 470.

We respectfully submit, therefore, that the decree of the judge of probate should be set aside, and a new decree entered, giving the fund in the hands of the administrator to the three appellants in equal shares.

*W. B. Small,* for the children of the deceased brothers of the testator.

By the will each of the daughters took a fee simple in one third of the land at the death of the testator, and a fee simple in one half of the other third at the death of his widow. The estate of each, however, was determinable upon the contingency of her dying without issue ; and if either survived the death and the failure of issue of the other, she was to have the whole estate, determinable in like manner ; and upon the death of both without issue, the son Charles surviving, he was to take the whole for life, and after his death the estate was to go to the heirs of his body, then to the testator's next of kin and their heirs and assigns forever.

Under this will, by the rules of law existing prior to the abolition of estate's tail here,—*Jewell* v. *Warner*, 35 N. H. 176,—these daughters would have taken an estate tail general, and the limitation over would have been good as an estate tail. But estate's tail having been abolished here, the question is, first, whether the limitation over is good, either as a contingent remainder, or as an executory devise. If not good as one or the other, then it is void altogether.

It clearly is not good as a contingent remainder, because the first taker took a fee simple. If not good, therefore, as an executory devise, the estate was absolute in the daughters and descended to their heirs.

Whether it was good as an executory devise depends upon the construction of the words " dying without issue," as used in this will.

Are the words " if either of my daughters shall die without issue " to be construed to mean, without issue living at her death, or an indefinite

failure of issue ? If the latter, then the limitation over is void as an executory devise, being too remote ; and the estate was absolute in the daughters, and descended to their heirs.

Until the case of *Hall* v. *Chaffee*, 14 N. H. 219, there was, it must be admitted, a very strong current of authorities holding that such words, without more, import an indefinite failure of issue, and that the limitation over is void. Yet this doctrine has always been unsatisfactory, and courts have laid hold of the slightest indications of a contrary intention to avoid it.

This precise point did not arise in *Hall* v. *Chaffee*, and therefore is not authoritatively determined by that case ; yet the exhaustive opinion of PARKER, C. J., concurred in by WOODS, J., seems to establish that the rule is a violation of the grammatical construction of the English language, in its ordinary sense ; that it gives the will a different meaning from what the testator intended ; and that it has given rise to so many embarrassing distinctions, exceptions, qualifications, limitations, and contradictory decisions, that it has become involved in inextricable confusion, and it is no longer worthy to be called a rule.

But however the law might have been when *Hall* v. *Chaffee* was decided, it is not possible that the rule under consideration can be the law here now. That rule had its foundation in the law of primogeniture and estates tail. Primogeniture has no place in our law ; and since the decision of *Hall* v. *Chaffee*, the law of estates tail has been abrogated here. *Jewell* v. *Warner*, 35 N. H. 176. Without the law of estates tail to support it, the rule cannot exist.

PARKER, C. J., says, in *Eaton* v. *Straw*, 18 N. H. 330,—" Should estates tail be abolished here, it would no longer be possible to follow those decisions [those opposed to *Hall* v. *Chaffee*], because the will could not be construed to give an estate which the law did not permit to exist, without destroying the provision itself. But no court could say in such a case that the provision of the will was void because it constituted an estate tail, when in fact the testator never contemplated ' the constitution of such an estate, and the will is capable of a different construction.' "

The rule in question can exist only by virtue of the law of estates tail, and that law being abolished, the rule is abolished also, and this limitation over is good as an executory devise ; and upon the death of Mary Ann the estate reverted to the next of kin of the testator and their heirs and assigns forever. Who are embraced in the term " next of kin " ? The next of blood strictly, or the next of kin according to the statute of distributions ? Until the decision of *Elmesly* v. *Young*, 2 Mylne & Keen 780, the English authorities upon this point were divided. Among those favoring the claims of the representatives according to the statute of distributions, may be named Lord KENYON, in *Stamp* v. *Cooke*, 1 Cox 234 ; Mr. Justice BULLER, in *Phillips* v. *Garth*, 3 Bur. Ch. Cas. 64 ; Sir J. LEACH, in *Hinckley* v. *Maclarens*, 1 Mylne & Keen 27. On the other side are Lord THURLOW, in *Garrick* v. *Camden*, 14 Ves. 372, and Sir WILLIAM GRANT, in *Smith* v. *Campbell*, Cooper 217.

It is agreed upon all hands that a devise or bequest to next of kin vests the property in the persons who would take under the statute of distributions.   The reason for attempting to engraft upon this principle the qualification that it is to be confined strictly to next of blood, to the exclusion of children of deceased brothers and sisters, must be sought for in the feudal policy of the English law, which does not favor distributions of estates or tenancies in common,—2 Blk. Com *193,— but has so far opposed them that it has been found necessary, in creating tenancies in common, to add words of exclusion as well as description, and to limit the estate to be held by the grantees as tenants in common, and not as joint tenants.   2 Blk. Com. *194.

Still this limitation of the words next of kin has been unsatisfactory, and courts have laid hold of any expression of the testator implying his intention that the words next of kin should be construed according to the statute of distributions, to avoid this limited construction. See 2 Wm.'s Ex. 1364, and notes.

Judge Story says—2 Eq. Jur. 1065 *b*—" next of kin " is *sometimes* construed to mean next of blood, or nearest of blood, and sometimes those only who are entitled to take under the statute of distributions.

In the comparatively recent case of *Doody* v. *Higgin*, Vice-Chancellor WOOD held that " next of kin " meant next of kin according to the statute of distributions.   19 Law Rep. (new series) 353.

It is undoubtedly true, I think, that the term *next of kin* in wills has been uniformly construed here with reference to the statute of distributions, and to denote such relations as are within that statute.   *Varrell* v. *Wendell*, 20 N. H. 431.

It is extremely important that the law of the descent and distributions of estates should be simple and plain.   It is so here now.   The real and personal are governed by the same rules.   Apply these same principles to the construction of wills, where the terms of the instrument will warrant it, and we shall have one uniform, plain, and simple system of rules for the disposition of the estates of persons deceased, which everybody may understand.   Encumber them with artificial limitations and exceptions, and you destroy their symmetry, and make it difficult for any, and impossible for the enfeebled and the dying, to know or understand what their own wills may mean.

*S. C. Eastman*, for the heirs of Mary A. Pinkham on her mother's side.

SMITH, J.   The contingency upon which Charles E. Pinkham was to take the estate devised to his sisters never happened, he having died during the lifetime of Mary without issue.   No part of his father's estate devised to his sisters ever descended to him, or to the heirs of his body, because there were no such heirs.   The will of Richard Pinkham is therefore to be construed as if no devise or bequest to Charles had been made.   *Eaton* v. *Straw*, 18 N. H. 320, and authorities cited on p. 324.

I. The question presented is, whether, upon the death of Mary without issue, the estate which she inherited from her father descended to her heirs, or to the next of kin of her father ; and the answer to this question depends upon whether the limitation over to the next of kin of the testator by way of executory devise is void for remoteness. In other words, Does the language of the will—" if both of my said daughters shall die without issue "—mean without issue at the time of their respective deaths, or an indefinite failure of issue at any time afterwards, no matter how long after ? If the latter, then the limitation is void for remoteness ; but if the former, then it took effect by way of an executory devise, and the estate descends to the next of kin of Richard Pinkham.

In *Hall* v. *Chaffee*, 14 N. H. 215, is an interesting discussion by PARKER, C. J., whether the courts of this state would, when a case should arise, be bound to follow the English decisions, that a devise to a person, with a limitation over in case he should die without issue, would be void for remoteness if such person should die leaving no issue living. It was not necessary in the decision of that case to decide what words would and what would not be held to denote such a failure of issue, because the language of the will then under consideration did not admit of any other construction than that the testator intended a failure of issue at the time of the death of the first taker. In the very able review by Judge PARKER of the authorities, and in his discussion of the principles that underlie the doctrine, he very significantly questions whether we are bound to follow a cast-off rule of the English jurisprudence as a true rule of the common law here upon the subject. Likewise, in the subsequent cases of *Bell* v. *Scammon*, 15 N. H. 381, *Eaton* v. *Straw*, 18 N. H. 320, and *Downing* v. *Wherrin*, 19 N. H. 9, the intention of the testator clearly appeared to be a failure of issue living at the time of the death of the devisee, and consequently the court was not called upon to determine whether the words used of themselves denoted a definite failure of issue.

In the case before us the court is saved the trouble of inquiring whether the language of the will—" if both my said daughters shall die without issue "—means an indefinite failure of issue, according to the old English rule in relation to estates of inheritance. The intention of the testator, to be collected from the whole will taken together, is " the pole star to guide the court " in the interpretation of the will.

The testator devised his estate to his two daughters in fee, " they conforming to and discharging the provisions of his will," which he established in the following terms :

"And my will further is, that if either of my said daughters shall die without issue, that the survivor of them and her heirs and assigns shall have the share of her deceased sister ; and if both of my said daughters shall die without issue, that my son, Charles E. Pinkham, shall have the use and income of all my said estate during his natural life, and after his death the same to descend to the heirs of his body and their heirs and assigns forever ; but if the said Charles E. Pinkham

shall die without any heirs of his body, then my will is that said estate shall go to my next of kin and their heirs and assigns forever."

The will also provided that the daughters should pay certain annuities to the testator's son, mother, and sister during their lives ; and if the daughters died without issue and the estate should come to his son and the heirs of his body, he and they should continue the same annuities to his mother and sister during their lives.

These provisions taken together clearly show, to my mind, that the testator intended a failure of issue at the time of the deaths respectively of his daughters and son. I do not see how they admit of any other construction. The provision, that if either daughter should die without issue the survivor and her heirs should take the share of the deceased sister, certainly shows that the testator had in his mind only the contingency of her dying leaving no issue at the time of her death, and not an indefinite failure of issue long afterwards—perhaps after several generations. So the provision, that if both daughters should die without issue the son Charles should take a life estate, remainder to the heirs of his body, unmistakably shows that by the words " shall die without issue " the testator meant a dying without issue living at the time of the death of his daughters. Likewise the provision, that upon the death of the son the estate should descend to the heirs of his body and their heirs, shows that the same idea was in the mind of the testator, and that the thought of an indefinite failure of issue after several generations was not what he intended to provide for. There is nothing in any of these several provisions that indicates that the testator intended the dying without issue should be understood in the technical sense of an indefinite failure of issue, according to the discarded English rule, when applied to both of his daughters, and in the common and grammatical sense of a definite failure of issue when applied to the daughter who should first decease. It is a familiar rule, applied in the construction of wills, that words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appear from the context, or unless the words be applied to a different subject. Redf. on Wills 427. The further provision, imposing the payment upon the successive takers of the property of an annuity to the mother and sister of the testator, is also evidence, as it seems to me, that he intended a definite failure of issue at the death of each successive taker.

It is well settled, also, that a limitation to a survivor indicates an intention to limit on a definite failure of issue. *Fosdick* v. *Cornell*, 1 Johns. 440, and authorities cited in appellants' brief.

It is no objection that the devise over depended upon more than one contingency. The number is not material, provided they are all to happen within the compass of a life or lives in being, and twenty-one years afterwards (adding, in case of gestation, about nine months). In this case all the contingencies upon which the devise over to the testator's next of kin depended must happen upon the deaths of his three children living at the date of the execution of his will.

For these reasons I am satisfied that the devise over to the next of kin of the testator took effect upon a definite failure of issue in his two daughters, which occurred upon their dying without leaving issue living at their deaths, and the devise over is therefore valid as an executory devise.

II. The next question that presents itself is, whether the estate over vested in the next of kin who were such at the death of the testator, or at the death of his surviving daughter. The rule as given in Jarman is, that where an estate is given to a *stranger* for life, or any other limited interest, then over to his next of kin, those who stand in that relation at the death of the testator will be entitled to take, whether living or not at the period when the devise over takes effect. 2 Jarman on Wills 52.

But if there be a gift for life or in fee to persons who are themselves the sole next of kin of the testator at the time of his decease, the gift over must be considered as intended to refer to the persons answering the description of next of kin at the death of the first taker. *Ib.*, 54, 55.

In Redfield on Wills (ed. of 1864, ch. 9, sec. 21, p. 392), the author says,—" The devise or bequest of property to the testator's heirs at law means those who are such at the time of his decease, unless a contrary intent is very obvious. Mere conjecture or surmise is not sufficient. But where there are intervening estates, and the remainder is contingent, it will be construed as having reference to those who shall sustain the relation of heirs at the time the estate vests in possession. But the fact that the persons to whom the estate for life is given are among such heirs is no sufficient ground to vary the general construction."

In *Abbott* v. *Bradstreet*, 3 Allen 587, the well settled general rule of construction is stated to be, that a bequest or devise to "heirs" or "heirs at law" of a testator will be construed as referring to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will. Where such intent is plainly manifested it will of course prevail ;—see authorities cited on p. 589. On p. 591 the court say,—" It has been held in some cases, that if there is a gift to a person for life with remainder to the testator's next of kin, and the person taking the life estate is the sole next of kin at the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the estate for life. *Jones* v. *Colbeck*, 8 Ves., Jr., 38; *Long* v. *Blackall*, 3 Ves. 486. And where the prior legatee, whose interest on his death without issue is divested in favor of the ulterior gift to the testator's next of kin, was one of such next of kin at the time of the testator's death, this has been deemed a sufficient ground for construing the words to mean the next of kin at the time of the happening of the contingency. *Butler* v. *Bushnell*, 3 Mylne & Keen 232. But both those classes of cases are generally recognized as exceptional, and the construction adopted is usually strengthened by some special circumstances indicative of intention. *Briden* v. *Hewlett*, 2 Mylne & Keen 90. Most of

them are cases of a bequest over, upon failure of some prior object of the testator's bounty."

*Sears* v. *Russell*, 8 Gray 86, is a case of this class, where upon special circumstances the intent of the testator was found to be a gift to those who were heirs at the time of distribution.

In *Jones* v. *Colbeck*, cited by the appellants, the daughter was the only next of kin of the testator at the time of his death ; and it was held that by " relations " the testator intended those who were such at the death of his daughter, and not at his own, " deeming it impossible that the testator could mean that his daughter, whom he evidently thought would survive him, should take under the devise over."

*Briden* v. *Hewlett*, 2 Mylne and Keen 90, also cited by the appellants, is another case where the intention of the testator was held, in opposition to the general rule, to be, under the circumstances disclosed by the will, that the property devised to his next of kin meant next of kin at the death of the first taker. The Master of the Rolls said,—" It is impossible to contend that this testator meant to give the property in question absolutely and entirely to his mother, because he gives it to her for life with a power of appointment."

Enough authorities have been cited to show what the rule is which must govern the decision of this case. Looking, then, at the will of Richard Pinkham, was it his intention that, in the event of his children dying without issue, his estate should descend to his next of kin who were such at the time of the death of the last survivor of them ? His only next of kin at the time of his own decease were these same three children to whom he devised his estate in fee. I cannot put this any more strongly than the learned counsel for the appellants does in his argument : " It would be, it seems to us, extremely absurd to suppose the testator could possibly have intended to give the property over after the death of his children without issue, to those very children to whom he had previously given it in fee. In the language of the cases we have cited, such an idea is impossible to be entertained ; and the testator must have intended to give it to those who should be his next of kin at the decease of the last survivor of his children, they all having died without leaving living issue. * * Such a devise over to those to whom the property had already been given in fee would be repugnant to the preceding provisions of the will, because both could not be carried into effect, and therefore void. *Sweet* v. *Chase*, 2 N. Y. 73."

III. At the time of the death of the surviving child of the testator, there were living two brothers and a sister of the testator. Four brothers had previously deceased, all leaving children who were then living. The last question presented for our consideration is, whether, under the term " next of kin," the two surviving brothers and sister only are included, or also the children of the four deceased brothers.

Counsel for the surviving brothers and sister contend that they alone are meant by next of kin, and cite *Elmesly* v. *Young*, 2 Myl. & K. 780, as authority.

That was an appeal from Sir JOHN LEACH, Master of the Rolls,

reported in the same volume, p. 82, who held, in 1833, that the words "next of kin" must be taken to mean next of kin according to the statute of distributions. On appeal, in 1835, the Lords Commissioners SHADWELL and BOSANQUET reversed his decision, and held that the words "next of kin," used *simpliciter*, are to be taken to mean *nearest* of kin. By this decision, the cases of *Phillips* v. *Garth*, 3 Bro. Ch. Ca. 64, decided in 1790, and *Hinckley* v. *Maclarens*, 1 Myl. & K. 27, decided in 1832, as well as *Elmesly* v. *Young*, as decided by the Master of the Rolls in 1833, were overruled;—also *Stamp* v. *Cooke*, 1 Cox 234, decided in 1786, where the question was whether "next relations" included nephews and nieces as well as sisters. Lord KENYON said,— "If the residue had been given to ' the next of kin,' and the testator had stopped there, the statute would have been the rule to go by ; and although nephews and nieces are not in fact so near as brothers and sisters, yet the fund would have been distributed *per stirpes*, according to the statute."

On the other hand are the cases of *Garrick* v. *Lord Camden*, 14 Ves. 372, *Smith* v. *Campbell*, Coop. 277, and *Brandon* v. *Brandon*, 3 Swanst. 312, where the rule as laid down in *Phillips* v. *Garth* is either dissented from or questioned.

The case of *Elmesly* v. *Young* may be considered as having settled the question in England. How far the result was due to the provisions of the statute of distributions does not clearly appear ; * but the conclusion reached is in conflict with our own case of *Varrell* v. *Wendell*, 20 N. H. 431, decided in 1846, nine years after the decision in *Elmesly* v. *Young*, and undoubtedly with full knowledge by the learned judge who delivered the opinion of the court of what had been held in that case. In *Varrell* v. *Wendell*, a bequest was made of bank stock for the life of the legatee, with power of sale on certain conditions, and to be apportioned among "the relations" of the testator according to the discretion of the legatee, to be by them enjoyed after her decease. She attempted to dispose of her stock by will, apportioning it among various persons that were of kin to the testator, in different degrees, and excluding some who were his next of kin. The question was whether this was a valid execution of the power. It was held by the court, GILCHRIST, J., that by his "relations" the testator must have intended, without any reasonable doubt, his "next of kin" *according to the statute*, and that

---

* Lord Commissioner SHADWELL, in his opinion, remarks,—"It is said that the term ' next of kin ' means, by force of its own natural import, the persons who take as next of kin by the statute of distributions; but this is not so manifest upon the face of the statute itself, in the sixth section of which it is enacted, ' that in case there be no children, nor any legal representatives of them, then one moiety of the estate is to be allotted to the wife of the intestate, the remainder of the said estate to be equally distributed to every of the next of kindred of the intestate who are in equal degree, and those who legally represent them;' so that the statute does emphatically, in directing a distribution in a particular case, take notice that the persons who are to take shall be the next of kin, and some other persons besides the next of kin of the intestate." Pp. 186, 187.

the apportionment must be confined to the next of kin according to the statute of distributions.

Referring to our statute of distributions, we find that the real estate (and the same rule applies to personal estate) of every person deceased descends in equal shares,—

1. To the children of the deceased, and to the legal representatives of such of them as are dead.

2. If there be no issue, to the father if he be living.

3. If there be no issue or father, in equal shares to the mother and to the brothers and sisters of the deceased, or their representatives.

4. To the next of kin in equal shares. Gen. Stats., ch. 184, sec. 1.

Who, then, were the next of kin of Richard Pinkham when the devise over to them took effect—to wit, upon the death of his last surviving child, Mary Ann Pinkham, without issue? No one named in the first clause of the statute, for his children were all dead, leaving no legal representatives. By the second clause, his father if he had been living; but he, too, had deceased. By the third clause, the mother and the brothers and sisters, or their representatives: his mother had also deceased, but there were two brothers and one sister living, and the children of four brothers deceased. Plainly, then, the two surviving brothers and sister, and the representatives of the deceased brothers, took the estate devised over to " the next of kin " of the testator.

By the construction contended for by the appellants, if at the death of Mary A. Pinkham there had been living other children than Lucy and Charles, and the representatives of still other children deceased, the estate must have descended to the children to the exclusion of the representatives of the deceased children : that is, if, as the appellants contend, by " next of kin " is meant the *nearest* of kin, children would take to the exclusion of children of deceased children, that is, grandchildren, and uncles and aunts to the exclusion of children of other uncles and aunts, that is, nephews and nieces. Nothing but imperative necessity would compel us to assent to a result so unjust and unnatural.

Except in *Varrell* v. *Wendell*, I cannot find that this question has before been raised in this court, or that it has been raised even in the probate courts of this state,—from which I infer that the term " next of kin " in wills, in this state, has been uniformly construed with reference to the statute of distributions.

How Richard Pinkham intended the words " next of kin " to be understood, is a very material inquiry, and any expression of his in his will, however slight, that would throw any light upon his intention, would be laid hold of for that purpose. 2 W's Ex. 1364, notes. It is not probable that he ever heard of the doctrine of *Elmesly* v. *Young.* It may be presumed, however, that he was familiar with our statute of distributions, and of the practice under i, and hence made his will with reference to the law as understood in t is state.

Our statute of distributions is plain nd simple. It is the same for

both real and personal estate. It is important that the rules of descent and distribution, and especially for the administration of estates, should be simple and uniform. The rule of construction here laid down, it seems to me, commends itself to the common-sense of every one, and will oftenest carry into effect the intention of testators.

The decree of the probate court should be set aside, and a new decree entered, giving the funds in the hands of the administrator to the surviving brothers and sister of the testator at the time of the decease of Mary Ann Pinkham, and to the representatives of the deceased brothers *per stirpes*, in equal shares. The thirty dollars advanced to Mrs. Chapman must be taken into account in determining her share.

CUSHING, C. J., and LADD, J., concurred.

*Decree accordingly.*

NOTE. At the December term, 1876, the appellants moved for a rehearing upon the last point, but the motion was denied. Costs were decreed in favor of the appellants against the children of the testator's deceased brothers and sisters.