KIMBALL & a., Ex'rs, *v.* PENHALLOW & a.

In a will bequeathing to four persons the sum of $2,000 each, with the limitation that "in the event of either the four dying without issue, his or her share to go to the survivors in equal parts, to have and to hold the same to them and their several and respective heirs and assigns forever," the limitation "dying without issue" is not void for remoteness. "Issue" means lineal descendant; and "dying without issue" means dying without issue living at the decease of the legatee. The share of a legatee dying without issue vests in the survivors free from the original limitation. The legatees may waive the limitation imposed by the will in their favor.

BILL IN EQUITY, by the executors of the will of Harriet L. Penhallow, deceased, for the advice and direction of the court in regard to the following clause in the will: " I give and bequeath unto Harriet A. Penhallow, Elizabeth J. Penhallow, Charles L. Penhallow, and David P. Penhallow, children of Andrew J. Penhallow two thousand dollars each, in event of either the four dying without issue, his or her share to go to the survivors in equal parts to have and to hold the same to them and their several and respective heirs and assigns forever."

The bill alleges that the estate is sufficient to pay the legacies given by the will, and that each of the defendants (being the legatees named in the above clause of the will) claims the sum of $2,000, and threatens to sue therefor: and that the plaintiffs are in doubt whether they may lawfully pay the same. The defendants demurred.

*The defendants, pro se.*

*A. R. Hatch*, for the executors. This is an application to the court by executors for instructions as to their duty ( *Goodhue* v. *Clark*, 37 N. H. 525), and is a friendly suit. Though the executors have no interest in the result, they think it proper, by their counsel, as friends of the court, and as a reason for the application, to suggest that the questions they are unable satisfactorily to determine arise from the words " dying without issue " in that clause of the will in which the deceased gives to the defendants $2,000 each; and " in event of either the four dying without issue, his or her share to go to the survivors in equal parts," &c., and are,—

1. Whether the limitation is void for indefiniteness or remoteness, so that they may pay the money directly to the defendants?

2. If there be an effectual limitation, how is the word " issue " to be interpreted? Whether it signifies children, or descendants? as, if one of the defendants shall die leaving grandchildren but no children?

3. Whether upon the birth of children the defendants severally will acquire a vested interest in the legacy to him or her? or, are the words " living at his or her decease " to be imported?

4. And if any die " without issue," will his or her share then vest in the survivors, or remain subject to the original limitation?

5. It will be observed that the clause in question gives nothing to the " issue " in any event; and that the limitation is in favor of the survivors of the parties now before the court, and no others. And it may become important to know whether the defendants, if they could agree, might waive the limitation, each so far as it is in his or her favor; or whether the will imposes upon the executors a trust which may not be waived, to hold the money until the events indicated in the will have happened.

The executors have been unable to discover in the will anything which may throw light upon the meaning of the words quoted in their bill.   The word "issue" is but once again used.

\*        \*        \*        \*        \*        \*        \*        \*        \*

The precedents upon this subject appear to us to be uncertain and contradictory.

(1) In the case of such words applied to real estate, the rule seems to be well settled that an indefinite failure of issue is to be understood, and that the limitation creates an estate tail only.   4 Kent Com. 273, 281, 283 ; 2 Jar. Wills 418 ; 2 Red. Wills 372 ; *Tenny* v. *Agar*, 12 East 253 ; *Dansey* v. *Griffiths*, 4 Mau. & Sel. 62 ; *Doe dem. Blesard* v. *Simpson*, 3 Man. & G. 928, in which Ld. *Denman* treated the word "children" as equivalent to "issue ; " *Downing* v. *Wherrin*, 19 N. H. 9, 89.

(2) In many cases the same rule is applied to bequests of personal property ; *Beauclerk* v. *Dormer*, 2 Atk. 314 ; *Bigge* v. *Bensley*, 1 Bro. Ch. 188 ; *Knight* v. *Ellis*, 2 Bro. Ch. 570, which turns upon the distinction between a gift to issue, and a limitation to other parties upon failure of issue ; *Everest* v. *Gell*, 1 Ves., Jr., 286 ; *Barlow* v. *Salter*, 17 Ves. 479 ; *Dansey* v. *Griffiths*, *supra ;* *Simmons* v. *Simmons*, 8 Sim. 22.   A rule of construction was established by the Will's Act, 1 Vict., *c.* 26, *s.* 29, which has governed all subsequent cases.   *Jarman* v. *Vye*, L. R. 2 Eq. 787.

Mr. Redfield says, " the final result at which the English courts seem to have arrived is, that where there is a clear gift of personalty, and a gift over in default of issue, it shall be held to vest an absolute estate in the first donee," &c.   2 Red. Wills 385, *c.* 13, *s.* 46 (ed. 1866) ; *Ide* v. *Ide*, 5 Mass. 500 ; *Moffat* v. *Strong*, 10 Johns. 12 ; *Paterson* v. *Ellis*, 11 Wend. 259.

(3) But there are authorities equally decisive, to the effect that the words " die without issue " as applied to personal estate will not be construed to import an indefinite failure of issue *( Chapman* v. *Forth*, 1 P. Wms. 663, *Pleydell* v. *Pleydell*, *ib.* 740, *Ranelagh* v. *Ranelagh*, 2 Myl. & K. 441) ; but in this case the legacies were expressly limited to the lives of the first takers.   *Radford* v. *Radford*, 1 Keen 486 ; *Winch's Trusts*, 21 L. & E. 367.   Mr. Jarman regards it as well settled, that where the phrase is " *leaving* no issue," in reference to personal estate, the legatee takes the entire interest defeasible on his leaving no issue at his death."   2 Jar. Wills 419.   Cases upon this subject are collected in 8 U. S. Dig. 692 ; 1 U. S. Dig. N. S. 461, *s.* 18 ; and 7 U. S. Dig. N. S. 272, *s.* 45. See, also, *Simonds* v. *Simonds*, 112 Mass. 157, 163 ; *Kimball* v. *Tilton*, 118 Mass. 311.   In some cases a distinction seems to be made between the words " die without issue " and " die without leaving issue," as in *Pye* v. *Linwood*, 6 Jur. 618, cited in a note *(l)* Jar. Wills 419.   In other cases weight seems to be given to the fact that the bequest is to the legatee for life, and if he shall die without issue, over.   We have not overlooked the question whether

the words of the will may not be construed to intend a definite failure of issue, because of the gift over to the "survivors" *(Roe dem. Sheers* v. *Jeffery,* 7 T. R. 589, *Bells* v. *Gillespie,* 5 Rand. 273, *Paterson* v. *Ellis' Ex'rs,* 11 Wend. 259, *Ranelagh* v. *Ranelagh,* 2 Myl. & K. 441, *Denn* v. *Shenton,* Cowp. 410; *Jackson* v. *Chew,* 12 Wheat. 153); but the soundness of these last two cases has been much questioned. *Moffat* v. *Strong,* 10 Johns. 12; *Symmes* v. *Moulton,* 120 Mass. 343. Upon the main question Lord *Thurlow* said, in *Bigge* v. *Bensley,* 1 Bro. Ch. 190, "that there were (in 1783) not less than fifty-seven cases on this point;" since which time they have greatly multiplied. See note to *Bigge* v. *Bensley,* Perkins's ed. In a note to 4 Kent Com. 282, it is said that the conflict of opinion as to the solidity of the distinction in *Chapman* v. *Forth,* is very remarkable, and forms one of the most curious and embarrassing cases in the law. Lord *Hardwicke* is reported to have decided the question both ways. 2 Atk. 288, 314. In *Dalrymple* v. *Hall,* L. R. 16 Ch. 715 (8 Feb., 1881), it was holden that the words "shall die unmarried" mean never having been married.

SMITH, J. 1. The limitation in that clause of the will which gives to the defendants $2,000 each, and "in event of either the four dying without issue, his or her share to go to the survivors in equal parts," &c., is not void for remoteness. "Dying without issue" means without issue at the death of the legatee. *Downing* v. *Wherrin,* 19 N. H. 9; *Hall* v. *Chaffee,* 14 N. H. 215; *Pinkham* v. *Blair,* 57 N. H. 226.

2. The word "issue" means child, grandchild, or other lineal descendant.

3. Upon the birth of a child or children, the defendants severally will not acquire a vested interest in the legacy to him or her. The meaning is, dying without issue living at his or her decease.

4. If either of the legatees shall die without issue, his or her share will vest in the survivors free from the original limitation. If A shall die before B, C, and D, leaving issue, his share would go to his legal representatives. If B shall next die without issue, his share would go to C and D, and A's heirs would take nothing in B's share. The children cannot be called a survivor. The heirs do not take as purchasers, but as heirs. All that the heirs can take is the share of their parent, and there would no longer be a share belonging to such parent.

5. We think the legatees may waive the limitation imposed by the will in his or her favor. The heirs of the legatees, taking as heirs and not as purchasers, have no vested interest in the bequest. If the legatees agree to waive the limitation imposed in their favor, we see no objection to their all joining in a full discharge and release to the executors for the legacy, expressly stating what they do with the fund, and making a present disposition of it. If the

testatrix had intended to prevent such disposition by the legatees, she could have expressed such intention in various forms, with or without the intervention of a trustee. Joint tenants of real estate may destroy the joint tenancy by conveyances (1 Wash. R. P. 411); and there is no reason why the modified joint tenancy created in this bequest of $8000 may not be terminated by mutual releases from the legatees. The will creates a modified joint tenancy in the four legatees in the sum of $8000 during their joint lives, the right of survivorship being liable to be defeated by the legatees dying with issue living at his or her death. There is no rule that deprives these words of their literal meaning. The essential element necessary to create a joint tenancy—the *jus accrescendi*—is found in this bequest, modified only by the contingency of either of the legatees dying with issue.

It being a joint tenancy for life, the legatees are entitled to receive each the legacy of $2000, and to enjoy the income for life, upon giving security to the executors for the benefit of the other legatees, that the principal shall be preserved unimpaired for the survivors, in case he or she shall die without issue; otherwise, a trustee must be appointed to take the fund, paying the income to the legatees during their lives, and the sum of $2000 to the survivors if either shall die without issue, or to his legal representatives if he shall die leaving issue.

*Case discharged.*

CLARK, J., did not sit: the others concurred.