Sullivan,
March 7, 1905.

### PAUL, *Adm'r*, *v.* PHILBRICK *& a.*

Words in a will cannot be ignored, nor can words be interpolated by interpretation, unless the testator's intention would thereby be more clearly or fully expressed.

In the construction of a will, certain bequests to individuals and religious societies deemed to be contingent upon the decease of a grandson prior to the death of the testator's widow.

BILL IN EQUITY, by the administrator *de bonis non* with the will annexed of the estate of John McLaughlin, for directions as to the execution of his will. Facts found, and case transferred from the May term, 1904, of the superior court, by *Wallace*, C. J.

The testator died June 19, 1884, leaving a will dated May 7, 1881, the first clause of which directed the payment of his debts and funeral charges and the erection of gravestones. The second clause is as follows : " I give and bequeath to my beloved wife Mary E. McLaughlin all my household (property) furniture and provisions I may have on hand at the time of my decease. Also I give and devise to my said beloved wife all my real estate wherever found provided she requires it for her comfort and support, it being left for her to act her own good judgment." By the third, fourth, and fifth clauses, specific bequests of the testator's wearing apparel and other articles are made. The remaining provisions are as follows :

" Sixth I give and bequeath to my beloved wife Mary E. McLaughlin all the residue and remainder of my estate whether personal or real bank books or notes to use for her support during her life, if there should be anything left at her decease I dispose of it in the following manner,

" Seventh I give and bequeath to my grandson Charlie Philbric one thousand dollars if living at the time of the decease of my said wife, if not living at her decease, I dispose of it in the following manner namely.

" Eighth I give and bequeath to she that was Abbie Phillips formerly of this town forty dollars for labor done for my brother David in the town of Goshen.

" Ninth I give & bequeath to the Methodist Church in the town of Goshen . . . five hundred dollars the use of the same to be expended for Methodist preaching in said town.

" Tenth I give and bequeath to the Methodist Church in the town of Claremont two hundred dollars to be expended as the officers of said church may see fit provided there should be that amount left after paying the above bequests.

" Eleventh I give and bequeath to my grandson Charles Philbric Johnsons Natural History if living at the decease of my said wife if not living I give it to Ella Adams a niece of mine.

" Twelfth I give and bequeath to Francis McLaughlin of Acworth a nephew of mine, my large Bible at the decease of my said wife, and all other other reading books to Ella Adams a niece of mine.

" Thirteenth I give and bequeath all the remainder of property of every description to my beloved wife, she has full power to convey or dispose of said property at any time the same as I would if living, it is left for her support, and if there is any left it is to be paid as stated in this will as far as it goes. . . .

" Fourteenth I give and bequeath to my nearest heirs the remainder of my property if there should be any left after paying the above bequests at the decease of my said wife."

The testator was a native of Claremont, and lived in Goshen from 1870 to 1881, and in Claremont from the latter year until his death. He was a devout Methodist, being a member of the Methodist Church in Goshen while he lived there, and of the church of the same denomination in Claremont subsequently until his death. The Methodist Church in Goshen ceased to exist about 1888. The testator's widow died May 16, 1903. Their only child died in 1879, leaving a son, Charles M. Philbrick, who was born November 21, 1879, and lived with his grandparents until 1883. He is still living, is the nearest heir of the testator, and is one of the defendants.

The will was probated July 2, 1884. According to the inventory then filed, the testator's estate consisted of his homestead, appraised at $1,800, household furniture of the value of $186.50, provisions and produce of the value of $11.50, wearing apparel of the value of $20, and other personal property amounting to

$2,129.24. The plaintiff was appointed administrator upon the death of the widow, and he has realized from the real estate $1,925, and from the personal estate about $550, or about $2,475 in all. The widow left a will which has been duly probated, and by which she made Charles M. Philbrick her residuary legatee. She left an estate in her own right of some $300 or $400, substantially all of which was used in the payment of the expenses of her last sickness and funeral. Her will contained no reference to the estate of her husband, or to the execution of a power.

Charles M. Philbrick claims the entire estate. Abbie Phillips claims the legacy mentioned in the eighth clause of the will, the Trustees of the New Hampshire Methodist Conference claim the legacy mentioned in the ninth clause, and the Methodist Church in Claremont that mentioned in the tenth clause.

*Hosea W. Parker*, for the plaintiff.

*Leach, Stevens & Couch*, for Charles M. Philbrick.

*Ira Colby & Son*, for the other claimants.

CHASE, J. In determining the rights of the claimants under the eighth, ninth, and tenth clauses of the will (hereinafter designated " the claimants "), it may be assumed that there was left of the testator's estate, after all the rights of his widow under the will had been fully satisfied, property which, when converted into cash, amounted to $2,475. The claimants certainly have no reason to complain of this assumption. Do the provisions of the will entitle the claimants to the payment of their legacies from this money ? The answer to this question depends upon the intention of the testator, as expressed in the last sentence of the sixth clause of the will and in the clauses following it.

Beginning with the last sentence of the sixth clause, the will reads: " If there should be anything left at her [the wife's] decease, I dispose of it in the following manner, Seventh, I give and bequeath to my grandson Charlie Philbric one thousand dollars if living at the time of the decease of my said wife." Thus far there is no ambiguity and no need for interpretation. By applying the provision to the facts, it appears beyond question that Philbrick is entitled to one thousand dollars from what was left at the widow's decease. The will then proceeds: " If [Philbrick is] not living at her decease, I dispose of it in the following manner, namely." The question arises here, to what does " it" refer—the thousand dollars, or a residue of the estate left at the widow's decease ? Grammatically, " it " refers to the thousand dollars ; and if this was the

testator's intention, it is evident that the claimants are not entitled to anything by virtue of the eighth and subsequent clauses. The fund from which alone their legacies are payable would have no existence. If "it" refers to the residue of the estate after the payment of Philbrick's legacy, the fact does not afford them much assistance, because in any event their legacies seem to depend upon the condition that Philbrick is not living at the wife's decease. Their difficulty does not arise so much from the meaning of "it" as from the meaning of the condition expressed by the words "if not living at her decease." To entitle them to the legacies, these words must be omitted from consideration altogether, or the words "or, if living, there is anything left after the payment of his legacy," or words expressing that idea, must be interpolated after them. Words in a will cannot be ignored, nor can words be interpolated, unless it appears from all the competent evidence more probable than otherwise that the testator's intention would be more clearly or fully expressed by such interpretation. The testator's intention expressed in the will, whatever be the form of the expression, is the governing factor.

All the provisions of the will contained in the seventh and following clauses are consistent with the theory that the testator intended the claimants should receive nothing if Philbrick survived the testator's wife. That such must have been the intention in case the estate left at her decease should prove to be one thousand dollars or less, is evident; for in that event Philbrick would be entitled to the whole by virtue of the seventh clause. The thirteenth and fourteenth clauses contain all the evidence there is regarding the testator's intention in case the estate left should prove to be more than sufficient to pay Philbrick's legacy if he survived, or the claimants' legacies if Philbrick died before the testator's wife.

By the thirteenth clause, "all the remainder of property of every description" is given to the wife for her support, with full power to convey or dispose of it at any time the same as the testator would if living, "and if there is any left it is to be paid as stated in this will as far as it goes." The "remainder" here referred to must be that which is left at the wife's decease—not that left after paying Philbrick's legacy, or his and the claimants' legacies. This appears with reasonable certainty from the provision that "if there is anything left it is to be paid as stated in this will as far as it goes." A provision for the payment of legacies from the remainder left after the legacies themselves have been paid would be absurd. The provision that the remainder is to be paid "as stated in this will" does not add anything to, nor in any way modify, the terms by which payments were to be made according to the partic-

ular provisions of the will relating to them. The phrase "as stated in this will" merely refers to other portions of the will for the terms of payment. The intended office of the thirteenth clause, besides confirming the wife's right to control the property and use it for her comfort and support, appears to have been to confer upon her the additional power of disposing of the remainder at any time as the testator would, or perhaps might, do if living. Without stopping to consider whether the wife has attempted to exercise this power (*Kimball* v. *Society*, 65 N. H. 139; *Emery* v. *Haven*, 67 N. H. 503; *Shapleigh* v. *Shapleigh*, 69 N. H. 577), it is sufficient for the present purpose to note that the existence of the power has no tendency whatever to prove that the testator intended the claimants' legacies should be paid if Philbrick survived his wife and there was sufficient estate left after the payment of Philbrick's legacy.

The fourteenth clause is distinctively a residuary clause, expressed in general terms. It bequeaths to the testator's nearest heirs the remainder of his property "if there should be any left after paying the above bequests" at the decease of his wife. His nearest heir at the date of the will was the grandson, Charles M. Philbrick, then only about eighteen months old. The uncertainty as to the continuance of the child's life explains the use of the general term "nearest heirs" for a description of the beneficiaries intended under this clause. The "remainder" referred to is that left "after paying the above bequests" at the decease of the wife. If the grandson survived the wife, the bequests mentioned in the sixth, eleventh, and twelfth clauses, at least, would be payable before the remainder could be ascertained. If he did not survive, the bequests to the claimants would certainly be due. "The above bequests" would apply to the facts in either contingency. There is nothing in the words themselves, nor in their connection, which tends to show an enlargement or modification of the terms upon which any of "the above bequests" are payable. "After paying the above bequests" naturally signifies after paying them according to the terms of payment prescribed by the provisions making the bequests. This clause unconditionally disposes of whatever may be left of the estate in any event. If it had been omitted, it might be said with some reason that the testator's neglect to make disposition of the money left after satisfying Philbrick's legacy, other than by the eighth, ninth, and tenth clauses, was evidence that he intended these clauses should operate upon such remainder. But the presence of the fourteenth clause prevents such reason from being urged in behalf of the claimants. By reading all these provisions in the light of the circumstances surrounding the testator when he made the will, and giving the

words their ordinary, popular significance, nothing is found to justify the inference necessary to entitle the claimants to the legacies they seek.   The ties of blood are generally stronger than the ties growing out of social, benevolent, and even religious associations and interests.   It is not unreasonable to suppose that, as between his grandson and the claimants, the testator gave the preference to the grandson; that he intended the benevolent bequests should take effect only in case his "nearest heirs" were persons other than the grandson.

Such being the nature and effect of the testimony bearing on the question of the testator's intention, the plaintiff is advised that Charles M. Philbrick is entitled by the seventh clause of the will to one thousand dollars, and by the fourteenth clause to the remainder of the testator's estate; and that neither of the claimants is entitled to anything.

*Case discharged.*

All concurred.