Hillsborough, }
  Dec. 5, 1905. }

MERRILL & a. v. AMERICAN BAPTIST MISSIONARY UNION & a.

A devise of the "use, income, and occupancy" of real estate to certain persons and their heirs forever is a devise of the property itself, if such was the apparent intention of the testator.

An attempt to devise an estate in fee tail, in contravention of the established policy of the state, vests the devisee with an unconditional fee.

A devise over to charitable societies, to take effect "should my heirs and their heirs cease to exist, and the time ever come when there was no lineal descendant," is limited upon an indefinite failure of issue, conflicts with public policy, and is void for remoteness.

Where realty is devised to the testator's children and their heirs forever, upon condition that the balance of net income remaining after the satisfaction of certain charges and annuities shall be paid to the widow during her life, it is the duty of the devisees and their successors in title to pay such charges and annuities after her decease from the income of the estate, whether it be derived from tenants or from a use of the property by themselves.

A gift of an annuity to a charitable corporation, without limitation or qualification as to duration, indicates an intention that it shall continue so long as the annuitant exists and fulfils the purposes designed by its charter.

A gift of a perpetual annuity to a charitable trust is not within the general rule against perpetuities, and is valid.

BILL IN EQUITY, for an interpretation of Calvin Merrill's will. Facts agreed, and case transferred from the January term, 1905, of the superior court by *Pike*, J., without a ruling.

The plaintiffs are the four children of the testator named in the beginning of the clause requiring interpretation, which in substance reads as follows: "I give, bequeath, and devise to my four children, John C. Merrill, Arthur W. Merrill, Hattie E. Ware, and Walter B. Merrill, the use, income, and occupancy of my coalyard property [describing it], to them and their heirs forever, by their keeping the buildings insured and in good repair, paying all taxes and claims against said property, including any deficiency arising in the settlement of my estate, making such improvements from time to time as the business seems to warrant and require, and paying annually the sum of fifty dollars to the American Baptist Missionary Society, fifty dollars annually to the American Baptist Publication Society, . . . fifty dollars annually to the American Baptist Home Missionary Society, . . . and the balance of the net annual income from this property shall be paid

to my beloved wife, Elizabeth W. Merrill, during her lifetime annually.   Should my heirs and their heirs cease to exist, and the time ever come when there was no lineal descendant to occupy and care for said property as above directed, I would then give, bequeath, and devise the same to the three societies mentioned and their successors forever, in equal shares."

The two children first named are executors of the will. Besides the plaintiffs, six grandchildren survived the testator. His wife also survived him, but died in 1904.   The societies named are charitable corporations formed for the promotion of religion.   The "coal-yard property" consists of a tract of land situated near the tracks of the Boston & Maine Railroad in Milford, upon which there are coal and wood sheds, a grain elevator, and two cottages.

*Edward L. Kittredge*, for the plaintiffs.

*George B. French*, for the defendants.

CHASE, J.   The terms of the devise are: "I give, bequeath, and devise to my four children [naming them] the use, income, and occupancy of my coal-yard property [describing it], to them and their heirs forever, by" their doing the acts specified.   The right to exercise and enjoy the use, income, and occupancy of material things constitutes ownership; and a conveyance of these powers over particular things is ordinarily a conveyance of the things themselves.   "A devise of the income of lands is, in effect, a devise of the lands."   *Reed* v. *Reed*, 9 Mass. 372.   See, also, *Sampson* v. *Randall*, 72 Me. 109 ; *Hopkins* v. *Keazer*, 89 Me. 347, 355 ; *Diament* v. *Lore*, 31 N. J. Law 220.   It is evident that "use, income, and occupancy" were used by the testator in this sense, and that he intended thereby to devise the ownership of his coal-yard property, or, expressing the idea in still briefer terms, to devise the property itself.

The devise is to the four children, "to them and their heirs forever."   These are apt words to devise the property in fee. But there are other provisions in the will which seem to qualify the meaning of these words.   Passing by, for the moment, the provisions relating to the care of the property and the disposition of its income, this provision is reached: "Should my heirs and their heirs cease to exist, and the time ever come when there was no lineal descendant to occupy and care for said property as above directed, I would then give, bequeath, and devise the same," etc. This provision conveys the idea that the property should continue in the lineal descendants of the testator so long as there are any.

Reading the first provision above considered and this provision together, it seems that the testator's intention was to give his four children a conditional fee in the property, or an estate in fee tail, instead of an absolute fee. But such intention conflicts with public policy relating to restrictions upon the alienation of real property. Prior to the passage of the statute *de donis*, conditional estates of this kind were not considered with favor by the courts, because they tied up property indefinitely. The courts adopted what Blackstone characterizes "subtle finesse of construction, . . . in order to shorten the duration of these conditional estates," and held, among other things, that the birth of issue to the first taker fulfilled the condition and converted the estate into an absolute fee. To prevent the courts from thus controlling the law, the statute of Westminster the second, commonly called the statute *de donis*, was passed. It " revived in some sort the ancient feudal restraints which were originally laid on alienations, by enacting that from thenceforth the will of the donor be observed," thus paying " a greater regard to the private will and intentions of the donor than to the propriety of such intentions, or any public considerations whatsoever." 2 Bl. Com. 110, 111, 112. At first it seems to have been understood that the statute *de donis* was in force in this state, and that estates tail might be created ; but in 1857 it was held that the statute had been impliedly repealed by the state statutes relating to the descent and devise of property, and consequently that such estates no longer exist here. *Jewell* v. *Warner*, 35 N. H. 176 ; *Crockett* v. *Robinson*, 46 N. H. 454. A statute was passed in 1837 enabling a tenant in fee tail to convey the land by deed and thereby bar all remainders and reversions expectant on the estate tail. Laws 1837, *c.* 340, *s.* 1. This provision was continued in the Revised Statutes (*c.* 129, *s.* 1), but was dropped upon the enactment of the General Statutes in 1867, no doubt because of the intervening decisions above cited. The policy of the state, now well established, is that real estate shall not be tied up indefinitely by entailment. Attempts to do so in a case like this result in the transmission of an estate in fee, instead of in tail. *Crockett* v. *Robinson, supra.* A primary object of the testator in this case appears to have been to insure the payment to the three societies named, of the annuities given to them. As will be seen later on, this object is not defeated, nor is its fulfilment imperilled, by following the policy of the state in the interpretation of this devise. It follows, also, from what has been said that there was no remainder or reversion for the devise over to the societies to operate upon, in case of the failure of the testator's issue. Further than this, it is plain that the failure of issue referred to was not a failure at the death of

the first taker, but a failure at some indefinite time in the future. The language is, " should my heirs and their heirs cease to exist, and the time ever come when there was no lineal descendant," etc. This language removes all doubt on this point. The devise over to the societies, being limited upon an indefinite failure of issue, conflicts with the public policy above mentioned, and is void for remoteness. *Downing* v. *Wherrin*, 19 N. H. 9 ; *Hall* v. *Chaffee*, 14 N. H. 215, 221 ; *Pinkham* v. *Blair*, 57 N. H. 226 ; *Edgerly* v. *Barker*, 66 N. H. 434, 459. The estate which the four children got by the devise " to them and their heirs forever " was an estate in fee, notwithstanding the subsequent provision in the will above considered.

But the four children, and all others who succeed them in title to the property, are charged by implication with a trust in respect to it, to a certain extent. *New Parish in Exeter* v. *Odiorne*, 1 N. H. 232, 236 ; *Hutchins* v. *Heywood*, 50 N. H. 491, 496 ; *Tappan's Appeal*, 55 N. H. 317, 320, 321. The devise " to them and their heirs forever " is " by their keeping the buildings insured and in good repair, paying all taxes and claims against said property, including any deficiency arising in the settlement of my estate, making such improvements from time to time as the business seems to warrant and require, and paying " the annuities to the societies named, and the balance of the net annual income from the property to the wife annually during life. By the death of the widow she has ceased to be a beneficiary under the trust. No suggestion has been made that there are any claims outstanding against the property or the testator's estate. Apparently, the only beneficiaries of the trust now left are the three societies. They and the plaintiffs are the only parties interested in the property. It clearly appears that the testator's intention was that the annuities should be paid from the income of the property—not from the property itself. This appears from the fact that, after making provision for the payment of the taxes, insurance, and other incidental charges against the property and the annuities to the three societies, the testator provides that " the balance of the net annual income " shall be paid to his wife annually during life. The provision for the payment of taxes and other incidental charges appears to have been made for the purpose of preserving the body of the property to produce income to meet the payments to the annuitants and the widow. The presence of this idea in his mind is also shown by the devise over of the property, should the time ever come when there is no lineal descendant to occupy and care for the property as directed. The annuities are charged upon the income and not upon the *corpus* of the property. *Nudd* v. *Powers*, 136 Mass. 273 ; *Delaney* v. *Van Aulen*, 84 N. Y. 16 ;

*Irwin* v. *Wollpert*, 128 Ill. 527; *DeHaven* v. *Sherman*, 131 Ill. 115; *Baker* v. *Baker*, 6 H. L. Cas. 616.   The duty is placed upon the plaintiffs and their successors in the legal title to the property, to pay the taxes and other incidental charges upon it for the time being, and to pay from its net income the annuities, whether the income be derived from tenants or from use of the property by themselves.   So long as they faithfully perform this duty, the primary object of the testator is fulfilled.   The personal interests of those in whom the legal title to the property is lodged for the time being—they being entitled to the income of the property, except the sum required to pay the annuities—operate as a guaranty that the taxes and other incidental charges will be seasonably paid and that the property will be properly improved.   But should they fail to perform the duty in any particular, and the interests of the societies are affected or prejudiced thereby, the court of equity, in the exercise of its powers relating to trusts, will afford the beneficiaries an adequate remedy.

It does not appear, other than from the very general description of the property given in the case, what its income-producing capacity is.   As described, the property is quite extensive in quantity, and appears to be favorably located for business purposes and to have acquired a particular business character by prior use.   It would seem probable that its net income will be sufficient at all times to pay the annuities and something to the general owners.   It is unnecessary to consider at this time what would be the effect upon the annuitants in case the net income should be insufficient at any time to pay them in full—a question that may never arise.

An annuity may be perpetual, or for life, or for a period of years.   A gift of an annuity to a person without a limitation or qualification as to duration would generally be understood as designed to continue during the life of the annuitant.   2 Sto. Eq. Jur., *s.* 1065*a* and notes; *Bates* v. *Barry*, 125 Mass. 83; *Yates* v. *Maddan*, 3 Macn. & G. 532; *Blight* v. *Hartnoll*, 19 Ch. Div. 294. Here the annuitants are corporations, and all the evidence tends to show that the intention was that each annuity should continue so long as the corporation to which it is given exists and fulfils the purposes designed by the corporation's charter.   That it may continue perpetually does not affect its validity.   Charitable trusts are not within the rule against perpetuities.   *Rolfe and Rumford Asylum* v. *Lefebre*, 69 N. H. 238.

*Case discharged.*

All concurred.