Hillsborough, }
April 4, 1911. }

MCALLISTER, *Trustee,*     *v.*     HAYES, *Ex'r,* & *a.*

The language of a will is to be given a literal interpretation, in the absence of evidence that the testator used it in a different sense.

When the language of a will is plain and unambiguous, no intention on the part of the testator is to be sought after other than the one so expressed.

Words in a will which indicate the testator's intent to give a fund to nephews and nieces after the death of grandchildren cannot be rejected as meaningless, merely because a literal interpretation of them will postpone a division of the fund among the legatees until the decease of the members of a younger generation.

Where a will names the testator's son as residuary legatee and gives him the income of a fund which, after his death and that of all his lawful heirs, is to be divided among nephews and nieces, the income accruing after the son's death falls into the residuum and is payable to his estate during the lifetime of his children.

BILL IN EQUITY, for the construction of the will of John S. Elliot. The plaintiff, as the successor of one Balch, holds a fund of $20,000 as trustee under the will, and asks for instructions as to the disposal of the income.     Transferred from the January term, 1910, of the superior court by *Pike,* J.

The third paragraph of the will is as follows: "I give to said Balch the sum of twenty thousand dollars during the life of my son George F. Elliot in trust to safely invest the same and pay the net income thereof to him or for his benefit at the discreation of the Trustee from time to time as he shall Judge to be for his best interest, wishing in this way so far as I may to provide for the contingencys and misfortunes that sometimes come to the most prudent men." The testator also bequeathed to Balch "the sum of five thousand dollars in trust to safely invest the same and its accruing interest, until my grandson John S. Elliot, Jr. shall be sixteen years of age, and then apply so much thereof as shall be required for the education of my said grandson in a thorough manner, for such business or profession as said trustee, having regard to the tastes and capabilities, and habits of my said grandson shall deem most for his advantage and usefulness in life and to pay the unexpended balance from time to time to him, or for his benefit in the discreation of said Trustee, as he shall deem for his best good."     The will also made provision for the testator's wife and sister, and contained the following residu-

ary clause: "All the rest residue and remainder of my estate of whatever nature, I give bequeath and devise to the said George F. Elliot, said residue to include the said sum of five thousand dollars, or its accumulations, in case my said grandson shall not live to the aforesaid age of sixteen years."

The testator executed the will on May 13, 1876, and two days later added a codicil thereto, as follows: "Whereas I John S. Elliot of the City of Manchester in the County of Hillsborough and State of New Hampshire on the thirteenth day of May A. D. 1876 I made and executed my last will and testament in writing and whereas by my said Will I gave to Charles E. Balch in trust for my son, George F. Elliot during his life, the sum of twenty thousand dollars, now I do hereby make and declare this writing to be a Codicil to my said last Will and testament; to be annexed to and taken and allowed as a part thereof, and that after the decease of my said son George F. Elliot and all of his lawful heirs, I give and bequeath in equal shares of the said twenty thousand dollars in trust to the following named persons," mentioning by name seven nephews and nieces, "to them the said" persons "and their heirs and assigns forever in equal shares as hereinbefore stated."

The testator died November 29, 1876. At that time his son George F. had one child, John S. Elliot, Jr. Another son, G. Perley, was born January 21, 1877, and a daughter, Gladys M., was born September 30, 1887. George F. died October 6, 1905, testate. Some of the income that had accrued before his death is now in the hands of the trustee, as well as the income that has since accrued. Lucena M. Elliot, widow of George and one of the defendants, claims that the trustee should pay the income from said trust fund to her by virtue of a certain conveyance to her signed by her three children, who it is claimed are entitled to it under their grandfather's will. The nephews and nieces, legatees in the codicil of the will of John S. Elliot, also claim said income. Upon these facts the plaintiff requests the advice of the court as to the disposition of the income in his hands.

*George I. McAllister*, trustee, *pro se.*

*Charles C. Hayes*, executor, *pro se.*

*Burnham, Brown, Jones & Warren* (*Robert L. Manning* orally), for Lucena M. Elliot.

John H. Appleton (of Massachusetts), Herbert J. Wilson (of New York), and Harry J. Brown (Messrs. Wilson and Brown orally), for the nephews and nieces.

WALKER, J. If the testator's intention is determined by a literal interpretation of the language he used, the fund of $20,000 would not be payable to his nephews and nieces until after the death of George and the death of "all his lawful heirs." He does not specifically provide what shall be done with the fund and its income during the time that may elapse between George's death and the death of all his heirs. Was it his purpose, legally inferable from the will, that the fund should be held in abeyance during the lifetime of his grandchildren? That it was his purpose that the fund should eventually pass absolutely to the legatees named is too plain for argument. No trust was created for them. The words "in trust" in the bequests to them are merely descriptive of the fund bequeathed. *Tappan's Appeal*, 55 N. H. 317. But the literal significance of the language used leads to the conclusion that they were not to have it while George's children lived; and the question is, whether there is competent evidence disclosed by the case which shows that he did not have that intention, and, if he did not, what his intention was with reference to the time when his nephews and nieces should be entitled to the full enjoyment of the fund. In the absence of such evidence, or in the absence of sufficient evidence that, notwithstanding the language of the codicil, he intended that his nephews and nieces should have the fund upon the death of George, the literal meaning must prevail. The court cannot undertake to make a will for the testator upon the mere conjecture that he may have inadvertently or without full consideration failed to apprehend the force and effect of his language. *Paul v. Philbrick*, 73 N. H. 237. The presumption is, in the first instance, that he intended what his language naturally imports; if such was not his purpose, the fact must be found upon a judicial consideration of competent evidence tending to show its existence, and not by the exercise of testamentary power.

One of the general purposes of the testator, as evidenced by his will, was to establish a trust for the benefit of his son during the latter's life. Having provided for his son in this way, he executed the will without having indicated what disposition should be made of the trust fund upon the termination of the trust, except so far as it might pass under the residuary clause. Two days later this

omission evidently occurred to him and he then executed the codicil,. clearly indicating his purpose that eventually his nephews and nieces should have the principal of the fund. The fact that he did not specifically dispose of the income accruing from that fund after George's death and before the death of the latter's children is little evidence that he expected his nephews and nieces would receive the principal sum upon the death of George; in other words, it is little evidence that he attached no meaning to the last five words of the phrase "after the decease of my said son George F. Elliot and all his lawful heirs," or that these words were inserted by mistake. Though an examination of the will and codicil shows that they were somewhat inartificially drawn, the writer following in a general way some prescribed form, it is impossible upon such evidence as we possess to find that he did not intend what the language plainly imports.

That he might have used greater circumlocution, as he did in the other parts of the will, and perhaps have avoided in that way any possible doubt as to his meaning, is not evidence that his. brevity of expression in this instance was intended to express no idea. The provision that the nephews and nieces should not have the fund until after the death of George's heirs is easily understood and expresses a definite idea which leaves little room for construction. When the language of a will is plain and unambiguous,. no intention on the part of the testator is to be sought after other than the one so expressed. *Greenough* v. *Cass*, 64 N. H. 326. Mr. Elliot may have understood that the accruing income after George's death would pass under the residuary clause to his grand- . child or grandchildren, who would thus receive the benefit of it during their lives. It may have been his purpose to provide for them in this way, through the residuary legatee who was their father, postponing the legacy to his collateral kindred while his grandchildren lived. It may not be entirely clear why, having established a trust in a formal manner for his son, he attempted to. confer a similar benefit upon his grandchildren in this somewhat informal manner; but the difficulty of explaining his action in this. respect does not prove that he did not intend to benefit them in the way suggested, or that his language is entirely meaningless.

It is argued that, because it is clear he intended to benefit his. nephews and nieces, it is not probable he would postpone the. legacy to them until after the death of his grandchildren, who might naturally be expected to outlive the children of his brothers,

and sisters. But this argument also falls short of its purpose. It does not show that he did not have the intention to provide for his direct relatives to the second generation in the first instance. It is not an unnatural or unusual desire on the part of testators; and when the testator's language indicates such a purpose, it cannot be rejected as meaningless because other legacies are thereby postponed for a generation. The presumption is that he was attempting to dispose of his property as he desired it should go, and not as others might think it ought to go. It is not easy to find an intention on his part that the fund should be paid to the legatees upon the death of George, when he provided in unmistakable language that it should not be paid to them until after the death of George's heirs; and by "heirs" he evidently meant George's children. *Wiggin* v. *Perkins*, 64 N. H. 36, 38.

If the entire language of the codicil is considered in seeking the testator's purpose, there can be no doubt that he intended to confer some benefit upon George's children. It is not reasonable to infer that he desired to postpone the legacies to his nephews and nieces until George's children were all dead, unless he intended they should be benefited thereby. The fact that he bequeathed "the said twenty thousand dollars" to his nephews and nieces is evidence that they were not to have more than that sum; in other words, that they were not to have the income that had accrued from the fund. If this is so, then he must have understood and intended that the income after the death of George would pass under the residuary clause of his will, and, as George was his residuary legatee, that it would eventually be paid to George's children. If he had made no codicil, the trust fund after the death of George would have passed under the residuary clause (*Vandewalker* v. *Rollins*, 63 N. H. 460); for such was his intention as evidenced by the will alone. If that was his intention with reference to the fund itself when he executed his will, it is reasonable to suppose he had the same intention when he executed the codicil, with reference to the income of the fund after the termination of the trust and during the life of George's children. He knew, or it must be presumed he knew, it was probable that several years would elapse after the termination of the trust before the fund would be payable to the legatees, and that during that time it would produce a considerable income, which it was competent for him to dispose of by his will; and it was competent for him to dispose of it under the general residuary clause, in the same way that he did dispose of the principal sum when he drew his

will.   At that time his purpose was to give George the use and enjoyment of the income of the fund during life, preserving the fund intact while George lived, and upon the latter's decease to give it to his estate.   He did not intend to leave it undisposed of by his will, or to die intestate with reference to it.   Upon his death, if he had made no codicil, the fund would have vested in George subject to the trust.   *Kennard* v. *Kennard*, 63 N. H. 303; *Vandewalker* v. *Rollins, supra.*   If, upon a reasonable construction of the will alone, he believed he had disposed of his entire estate, including the trust fund, it would be difficult to infer that when two days later he drew the codicil he intended to leave the income arising on so large a sum for many years undisposed of.   Evidently, he understood that the residuary clause covered all of his property not otherwise disposed of, and he could see no reason why the general language of that clause was not sufficient; but in order that there might be no doubt upon this point, he specifically included in the residuum the trust fund of five thousand dollars for the benefit of his grandson in case he should not live to be sixteen years of age.   This particularity, however, does not show that he intended to exclude from the residuum the twenty thousand dollars after the trust ended.   To give it that effect would furnish a precedent for excluding from the operation of that clause all property not specifically mentioned therein—a result not contemplated by the testator and contrary to the universal understanding of the effect of general residuary language.   It is probable that he intended that the income of the fund not otherwise disposed of should fall into the residuum.

As the income of the fund after the death of George is not specifically disposed of, it is payable to his estate during the lifetime of his children.   But as the trust for George has terminated, the trustee is advised that it is his duty to turn over the fund, with the income arising since the decease of George, to the executors of John S. Elliot's estate, who will keep the principal fund invested and pay the income which has accrued since the death of George, as well as that which shall accrue during the lifetime of George's children, to George's executor.   *Snow* v. *Society*, 70 N. H. 48. The unexpended income which accrued before the death of George belongs to his estate, and the trustee is instructed to pay it to his executor.   *Sawyer* v. *Banfield*, 55 N. H. 149.

*Case discharged.*

All concurred.