Hillsborough, }
Feb. 7, 1928. }

HAROLD C. MCALLISTER, *Adm'r, v.* JOHN S. ELLIOT & a.

226

*Frank C. Livingston*, for the petitioner, furnished no brief.

*McLane & Davis* (*Mr. McLane* orally), for the defendant grand-children.

*Samuel J. Dearborn*, guardian *ad litem* and agent for non-resident defendants *pro se*, by brief and orally, representing the interests of the nephews and nieces.

BRANCH, J. The decree of this court in the case of *McAllister v. Hayes*, 76 N. H. 108, concludes the present parties upon all points which were adjudicated therein. Although the proceedings in that case originated with a bill praying for the construction of the will

of John S. Elliot and for instructions to the trustee, and although the final decree of the court took the form of instructions to the trustee, it was, nevertheless, the judgment of a court of equity upon the merits of the controversy, which finally determined the rights of the parties, and which effectually bars any other proceeding in which the parties seek to secure a different interpretation of the will or to assert rights inconsistent with those established by that decree. In that case, as in the present one, the court was called upon to decide between the conflicting claims of the testator's grandchildren on the one hand and the nephews and nieces named in his will on the other, and since the parties in interest in both proceedings are the same, they are concluded by the former decree upon the general principle of *res adjudicata*. *Cummings* v. *Parker*, 63 N. H. 198; *Hale* v. *Railroad*, 61 N. H. 641; *Ashuelot R. R.* v. *Railroad*, 59 N. H. 409; *Hall* v. *Dodge*, 38 N. H. 346; 21 C. J., Tit. Equity, *s.* 864. See also *Burleigh* v. *Leun, ante*, 115.

Even if the principle of *res adjudicata* were not strictly applicable, the same result would necessarily follow by reason of the nature of the proceedings. Bills for direction and advice are maintainable only by fiduciaries (*Flanders* v. *Parker*, 80 N. H. 566, 568; *Scammon* v. *Pearson*, 79 N. H. 213, 214; *Ross* v. *Church*, 77 N. H. 592, and cases cited; *Glover* v. *Baker*, 76 N. H. 393, 396) in regard to questions necessarily arising in the administration of their trusts. *Adams* v. *Hospital*, 82 N. H. 260, and cases cited; *Weed* v. *White*, 81 N. H. 197, 199; *Flanders* v. *Parker, supra*; *Drake* v. *True*, 72 N. H. 322; *Ellis* v. *Aldrich*, 70 N. H. 219, 222; *Paul* v. *Dole*, 70 N. H. 593; *Stevens* v. *Douglass*, 68 N. H. 209. They are designed to furnish protection to fiduciaries in the discharge of their duties and facilitate the execution of trusts. "The ground upon which a trustee is permitted to maintain a bill for advice is that otherwise he must act at his peril, or else wait until a claimant brings suit. *Greeley* v. *Nashua*, 62 N. H. 166. This process enables him to speedily and safely execute his trust." *Scammon* v. *Pearson, supra*. "Questions are prospectively determined by a court of equity only in behalf of trustees who in the execution of a trust are entitled to its protection." *Glover* v. *Baker, supra*. Judicial advice to a fiduciary will be unavailing as a protection to him unless it is treated as final and binding upon all concerned. Such is the rule in this state. "The court, under its general equity jurisdiction, has power to determine the rights of the parties on such petition." *Dole* v. *Chattabriga*, 82 N. H. 396, 397.

In *McAllister* v. *Hayes, supra*, it was held (1) that under the terms

of the codicil the principal of the trust fund will eventually pass to the nephews and nieces named therein, but that they are not to have it during the life of George's children; and (2) that the testator made provision for George's children by directing that the income of the trust fund should pass under the residuary clause of the will to George's estate upon the assumption that it would thence go to them. It was accordingly ordered that the income of the trust fund, after George's death, be paid to his executor during the lifetime of his children and this arrangement has been in effect ever since that decree was rendered. Under the law, as above stated, it cannot now be disturbed.

But in order that there be no misunderstanding in regard to the legal situation here presented, it may properly be pointed out that there are other equally good reasons why the position of the grandchildren cannot be maintained. Their claim is that the gift to the nephews and nieces violates the rule against perpetuities, that this feature of the case was not passed upon by the court in the previous opinion, and that a new decree should now be entered directing the plaintiff to pay the principal of the trust fund to them. This argument proceeds upon the assumption that there are only two possible explanations for the failure of the court to refer specifically to the rule of perpetuities in the case of *McAllister* v. *Hayes, viz:* (1) that since the trustee in that case asked for advice only in regard to the income of the trust fund, the possible application of the rule to the gift to the nephews and nieces which is now suggested was not considered by the court, or (2) that the court deferred consideration of the question because of the possibility that all George's children might die within twenty-one years after his death so that the nephews and nieces might be entitled to take under the *cy pres* doctrine as laid down in the case of *Edgerly* v. *Barker*, 66 N. H. 434. Neither of these explanations can be accepted.

An examination of the record in the case of *McAllister* v. *Hayes* discloses the fact that counsel on both sides in their briefs made repeated references to the rule against perpetuities. 275 Briefs and Cases, 133, 141, 151, 161. Under these circumstances it cannot be concluded that the possible application of the rule was not considered by the court in that case. Moreover, if it were true that the court at that time made its decision without perceiving the force of the legal objection now raised to this gift, this fact would not entitle the grandchildren to a reversal of the decree then entered. "The former judgment concludes the parties, not only as to every matter which was

offered and received to sustain or to defeat the suit, but also as to any other matter which might have been offered for that purpose." *Chesley* v. *Dunklee*, 77 N. H. 263, 267; *Metcalf* v. *Gilmore*, 63 N. H. 174, 189; *Ashuelot R. R.* v. *Railroad, supra.* If the court had deferred consideration of the question now raised because occasion for its decision had not then arisen and might never arise, the opinion, under the uniform practice in such cases, would have contained a statement to that effect. The silence of the court with reference to this subject is to be explained rather upon the ground that the inapplicability of the rule to any of the devises in the will was clear and that the only important question presented by the record in that case was the one dealt with in the opinion, *i. e.* the interpretation of the testator's language.

The rule against perpetuities has thus been phrased by a great authority: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray, Rule Against Perpetuities (3d *ed.*), *s.* 201. The above rule prevails in this jurisdiction. "To satisfy the rule which is in force in this state, the event upon which the gift over is to take effect must of necessity, if valid, occur within the life or lives of some person or persons in being and twenty-one years and a fraction thereafter." *Rolfe &c. Asylum* v. *Lefebre*, 69 N. H. 238, 243. "The Rule against Perpetuities is the law limiting the time within which future interests can be created." Gray, Rule Against Perpetuities (3d *ed.*), *s.* 4. "A vested interest is not subject to the Rule against Perpetuities. . . . Reversions and vested remainders, and those equitable interests and interests in personalty which, if they were legal interests in realty, would be reversions and vested remainders, are vested interests. Other future interests are not vested." *Id., s.* 205. A remainder is vested "where there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate; and it is contingent, when it is limited to take effect either to a dubious and uncertain person, or upon a dubious or uncertain event." *Wood* v. *Griffin*, 46 N. H. 230, 235; 2 Bl., Com. 169.

Disregarding the trust provisions in the will which only tend to obscure the legal situation, the devises, as construed in the former case, were in effect as follows: (1) to George for life, (2) remainder to George's estate during the lives of his children, (3) remainder without limit to the nephews and nieces named in the will. None of the estates thus created offended the rule against perpetuities. The effect of the above devises was to dispose of the trust fund completely. When the

will took effect, George was living, one of his children had been born, and the nephews and nieces, or their representatives, were, of course, in being. George's life estate was obviously unassailable. The estate in remainder during the lives of George's children vested upon the testator's death in George by virtue of the residuary clause of the will, and came into the possession of his estate at his death, or in other words, at the end of one life which was in being at the death of the testator. However awkward this method of transmitting the title may appear, it in no way violates the rule of perpetuities.

The final remainder to the named nephews and nieces was clearly vested when the will took effect. Counsel correctly summarized the situation as follows: "all the legatees to whom the corpus of the trust fund is thus bequeathed are designated by name, so they must have been *in esse* at the execution of the will, and so far as anything in the record shows, they were still *in esse* when the will became operative. The share of each is certain. The event upon which they should come into the full enjoyment of their respective shares, is an event that is certain to happen, to wit, the death of all of George's children. All the element[s] necessary to constitute a good vested remainder seem to be present." This remainder will, by its terms, vest in possession upon the death of the last surviving child of George, and therefore complies with the rule stated by professor Gray as a corollary to the general rule that "a remainder after life estates must vest in possession not later than the end of life estates which begin within the limits of the Rule against Perpetuities." Gray, Perpetuities (3d *ed.*), s. 210; *Appendix*, s. 973.

In reaching the above conclusions we have not lost sight of the suggestion made on behalf of the grandchildren that "the words of the codicil 'after the decease of my said son, George F. Elliot and all of his lawful heirs,' mean an indefinite failure of issue, which would at once place the gift over to the nephews and nieces under the ban." The particular application of the rule against perpetuities here sought to be made is thus expounded by professor Gray: "If a gift is made upon a failure of A's issue, the point to be determined is whether an indefinite failure of issue or a failure at A's death is intended. If the former, then it is meant that the gift over shall take effect whenever A's issue come to an end, even in the remotest generation. If the latter, then it is meant that the gift over shall take effect only in case A has no children living at his death. . . . In the case of personal estate the question of indefiniteness or definiteness of failure of issue is vital on the question of remoteness; for if the failure of issue be

indefinite, the gift over is too remote, while if it is definite, the gift over is of course good." Gray, Perpetuities (3d ed.), ss. 211, 212. Counsel concede that "the general rule of construction is in favor of a definite failure of issue" and this is undoubtedly correct. Gray, Perpetuities (3d ed.), s. 213; *Ladd* v. *Harvey*, 21 N. H. 514, 526, 527. The strength of the prevailing tendency to interpret wills in such a way as to sustain devises of this kind is illustrated by the fact that out of eight cases in which the question has arisen in this state, to wit: *Hall* v. *Chaffee*, 14 N. H. 215; *Bell* v. *Scammon*, 15 N. H. 381; *Eaton* v. *Straw*, 18 N. H. 320; *Downing* v. *Wherrin*, 19 N. H. 9; *Ladd* v. *Harvey*, 21 N. H. 514; *Pinkham* v. *Blair*, 57 N. H. 226; *Kimball* v. *Penhallow*, 60 N. H. 448; *Merrill* v. *Baptist Union*, 73 N. H. 414, only one has been found, viz, *Merrill* v. *Baptist Union, supra*, in which the language of the will was held to import an indefinite failure of issue. Considered from this point of view, the language of the codicil presents no difficulty. The use of the word "heirs" to mean "children" is common and well recognized. *Wiggin* v. *Perkins*, 64 N. H. 36, 38. The trust fund was originally designed solely for the benefit of George. The codicil, as pointed out in *McAllister* v. *Hayes, supra*, was an afterthought, designed to confer a benefit upon the grandchildren and also upon the testator's nephews and nieces. This intention can be carried out by construing the word "heirs" to mean "children," as was done in the previous opinion, and it is so construed.

The plaintiff is, accordingly, advised to retain the principal of the trust fund in his possession, to pay the income thereof to the executor of George's estate, as previously ordered, so long as any of George's children remain alive, and at the decease of the survivor of them, to pay the principal to the nephews and nieces named in the will, or their legal representatives.

*Case discharged.*

All concurred.