Coös,
May 4, 1931.

WILLARD D. BUBER, *Adm'r v.* KATHLEEN BUBER, *App't.*

*Matthew J. Ryan* and *Crawford D. Hening* (*Mr. Hening* orally), for the appellant.

*Warren W. James*, (by brief and orally), for the appellee.

SNOW, J.  The primary issue presented is the date when the gift in trust to Lawrence was made payable,—the appellant claiming it was due one year from the death of the testator, the appellee that it is payable on the death of the testator's widow.  Both parties concede the question is one of intention of which Luther's will is the sole competent evidence.

The appellee points out that the first sentence of the second paragraph of the will unequivocally bestows upon Ellen, during widowhood, the income upon the balance of the testator's estate not bequeathed in the first clause; that the fifth paragraph expressly makes Lawrence's legacy payable on Ellen's death, if she remains unmarried; and that the final sentence of the will, providing for a contingent reduction in the amount of the legacy upon her remarriage or death, is inconsistent with an intention to fix an earlier date of payment.

The appellant on the other hand says the words "balance of my estate" in the second clause, which closely interpreted meant the residue after the preceding bequest of the business, may be construed to exclude the later bequest to Lawrence; that, by omitting to expressly limit the time of the payment of the trust legacy in the paragraph creating it, the testator must be held to have acted in contemplation of the rule that pecuniary legacies are payable one year from the death of the testator; that the imposition upon the executor of the duty of selecting the trustee contemplated action forthwith during the usual period of administration; that the provision in the fifth clause "at her [the widow's] death . . . Lawrence . . . shall have the five thousand dollars, as above stated, under the conditions already given" may as consistently be interpreted as speaking of the continuance of the trust as of its commencement, and is not, therefore, conclusive as to the time of its payment; that the use of the words "shall be reduced" presupposes a legacy already segregated, and that the possibility of such reduction does not preclude earlier payment under safeguarding conditions; that the intention to make the legacy payable on the death of the testator better accords with the presumptive in-

tention to treat the sons equally; and that, upon a balance of all the probabilities, it appears that the intention was to make the legacy payable presently upon the death of the testator.

The discussions of counsel have taken a wide range, and divergent views have been expressed as to the applicability and evidentiary value to be accorded to the facts arrayed and the rules invoked. No useful purpose would be served in a seriate consideration of the merits and fallacies of the supporting arguments. It is sufficient to say that, after giving them all due consideration, it appears to us by a very strong balance of probabilities that the intention of the testator was to make the legacy payable upon the remarriage or death of the widow.

The primary purposes of the testator, drawn from the whole will, were (1) to bestow his "business" in equal shares upon his widow and three sons, or upon the sons in case of the widow's remarriage, (2) to insure the support and maintenance of his widow during her unmarried life from income on his remaining estate, with recourse to the principal thereof if necessary, and (3) to place in trust his bounty to Lawrence outside the business.

Intelligently read, in the light of these purposes, and with due consideration of the evident lack of skill in the draftsman, there is little, if any, ambiguity as respects the testator's intention. Such doubts as have been mooted appear to be due to defective paragraphing and punctuation in the second to fifth sections. No serial signification in the numbering, after the first two sections, has been suggested or is here perceived. The paragraphs and numbers were apparently designed merely as stops or punctuation.

It is clear that the testator intended the final disposition of the residue of the estate, beyond his business, should be the same whether it should occur upon the remarriage or upon the death of the widow. The scrivener saw fit to treat the contingency of remarriage first, in the second to fourth sections, and to set up the contingency of death merely by reference and repetition in a separate section (Sec. 5). The clause fixing the time of payment as the date of Ellen's death if she remains a widow, thus given its right relation to what precedes, is decisive of the testator's intention.

In view of the conclusion reached it is unnecessary to consider the effect of the written stipulations of 1919 between the widow and three sons agreeing to the same interpretation.

The bequest to Lawrence was a vested legacy. *Kennard* v. *Kennard*, 63 N. H. 303, 310; *Flanders* v. *Parker*, 80 N. H. 566, 568; *McAllister*

v. *Elliot*, 83 N. H. 225, 230.   From the death of Luther, Lawrence has a *cestui's* interest in the bequest which upon the latter's death passed to his administrator freed from the special trust, but still subject to the limitation as to time of payment.   While this interest is not reducible to possession during Ellen's life it nevertheless remains a property right which should have been inventoried by the appellee as an uncollected item of Lawrence's estate.   P. L., *c*. 300, *s*. 1.   If he desires to be discharged from his trust the administrator may seek authority by an order of the probate court (*Id*., *s*. 10) or by a decree of distribution (*Id*., *c*. 307, *s*. 6), to turn such right over to the widow and heirs of Lawrence according to their respective interests.   Their recorded receipts will entitle him to be discharged of the item.   Otherwise the legacy should be accounted for as an asset remaining in his hands for further administration.   No disposition of the right having been made, the decree of the probate court allowing the appellee's account without charging him with this asset was error.

The question mooted in argument that, because the gift to Ellen was of the income only, a trustee under Luther's will should be appointed to protect the principal of his residuary estate is not here presented.   The trusteeship imposed upon Lawrence was for his protection against his own improvidence, and the occasion for it ceased with his death.   As respects the need of protection of Luther's residuary estate, the right of Lawrence's estate therein stands no differently than that of the other two sons.   If facts exist which call for such protection it cannot be settled on this appeal.

*Appeal sustained.*

All concurred.